## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| KENNETH HOCH,<br><br>    Plaintiff,<br><br>    v.<br><br>BARBARA T. ALEXANDER, STEPHEN M. BENNETT, DONALD G. CRUICKSHANK, RAYMOND V. DITTAMORE, THOMAS W. HORTON, IRWIN M. JACOBS, PAUL E. JACOBS, ROBERT E. KAHN, SHERRY LANSING, DUANE NELLES, FRANCISCO ROS, BRENT SCOWCROFT, MARC I. STERN, WILLIAM E. KEITEL, STEVEN R. ALTMAN, STEVEN M. MOLLENKOPF, DONALD J. ROSENBERG and QUALCOMM INCORPORATED,<br>    Defendants,<br><br>    -and-<br><br>QUALCOMM INCORPORATED,<br><br>    Nominal Defendant. | C.A. No. 11-CV-217-BMS |

## PLAINTIFF'S OPENING BRIEF IN SUPPORT OF HIS MOTION FOR PARTIAL SUMMARY JUDGMENT FOR AN INJUNCTION AGAINST PAYMENTS AND AWARDS UNDER THE QUALCOMM 2006 LONG TERM INCENTIVE PLAN

FARNAN LLP
Joseph J. Farnan, III   (#3945)
Brian E. Farnan (#4089)
919 N. Market Street
Wilmington, Delaware 19801
Tel.: (302) 777-0300

*Attorneys for Plaintiff Kenneth Hoch*

Dated: June 30, 2011

BARRACK, RODOS & BACINE
Alexander Arnold Gershon
Michael A. Toomey
425 Park Avenue, Suite 3100
New York, New York 10022
Tel.: (212) 688-0782

BARRACK, RODOS & BACINE
Leonard Barrack
Daniel E. Bacine
Lisa M. Lamb
3300 Two Commerce Square
2001 Market Street
Philadelphia, Pennsylvania 19103
Tel: (215) 963-0600

172773v1

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................ iii

NATURE AND STAGE OF THE PROCEEDINGS ................................................... 1

SUMMARY OF ARGUMENT ................................................................................... 1

STATEMENT OF THE FACTS ................................................................................. 2

ARGUMENT ............................................................................................................... 3

I.    THE APPLICABLE STANDARD .................................................................. 4

II.   PLAINTIFF IS ENTITLED TO SUMMARY JUDGMENT BECAUSE THERE ARE
NO MATERIAL FACTS IN DISPUTE AND HE IS ENTITLED TO JUDGMENT AS A
MATTER OF LAW ........................................................................................... 5

    A.   No Material Fact Is in Dispute ................................................................. 6

    B.   Plaintiff Is Entitled to Judgment as a Matter of Law ............................ 7

III.  PRE-SUIT DEMAND IS EXCUSED .......................................................... 11

IV.  THE COURT SHOULD ENJOIN AWARDS AND PAYMENTS TO THE FIVE
NAMED OFFICER-DEFENDANTS UNDER THE 2006 LTIP, AS AMENDED ......... 14

CONCLUSION .......................................................................................................... 15

## TABLE OF AUTHORITIES

**Cases**

*Abbott Labs. v. Lupin Ltd.*, 2011 U.S. Dist Lexis 53846 (D. Del. May 19, 2011) .........................5

*Albert v. Alex Brown Mgmt. Servs., Inc.*, 2005 Del. Ch. Lexis 133 (Del. Ch. Aug. 26, 2005) .....13

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (U.S. 1986)............................................................5

*Celotex Corp. v. Catrett*, 477 U.S. 317 (U.S. 1986)........................................................................6

*Chaffin v. GNI Group, Inc.*, 1999 Del. Ch. Lexis 182 (Del. Ch. Sept. 3, 1999) ...........................13

*City of Roseville Employees' Ret. Sys. v. Horizon Lines*, 713 F. Supp. 2d 378 (D. Del. 2010) ....13

*Diceon Electronics, Inc. v. Calvary Partners, L.P.*, 772 F. Supp. 859 (D. Del. 1991) .................18

*Gould v. American-Hawaiian S.S. Co.*, 535 F.2d 761 (3d Cir. 1976) .........................................6, 8

*Grayson v. Imagination Station, Inc.*, 2010 Del. Ch. Lexis 169 (Del. Ch. Aug. 16, 2010) ..........15

*Grimes v. Donald*, 673 A.2d 1207 (Del. 1996) ............................................................................15

*In re Anderson, Clayton S'holders' Litig.*, 519 A.2d 669 (Del. Ch. 1986) ...................................17

*In re Triarc Cos., Inc.*, 791 A.2d 872 (Del. Ch. 2001) ................................................................14

*In re Tri-Star Pictures, Inc. Litig.*, 1990 Del. Ch. Lexis 80 (Del. Ch. Jun. 14, 1990).................17

*In re Westinghouse Sec. Litig.*, 832 F. Supp. 989 (W.D. Pa. 1993) .............................................17

*J.I. Case Co. v. Borak*, 377 U.S. 426 (U.S. 1964) .......................................................................14

*Kalmanovitz v. SEC*, 449 U.S. 1012 (1980) ................................................................................13

*Katz v. Pels*, 774 F. Supp. 121 (S.D.N.Y. 1991) .........................................................................17

*Loral Space & Commc'n Inc. v. Highland Crusader Offshore Partners, L.P.*, 977 A.2d 867 (Del. 2009)..............................................................................................................................14

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (U.S. 1986) ...........................5

*MCG Capital Corp. v. Maginn*, 2010 Del. Ch. Lexis 87 (Del. Ch. 2010) ...................................16

*President & Fellows of Harvard College v. Glancy*, 2003 Del. Ch. Lexis 25 (Del. Ch. Mar. 21, 2003) ................................................................................................16

*Resnik v. Woertz*, 2011 U.S. Dist. Lexis 31868 (D. Del. 2011) ....................................................16

*San Antonio Fire & Police Pension Fund v. Bradbury*, 2010 Del. Ch. Lexis 218 (Del. Ch. Oct. 28, 2010) ................................................................................................15

*SEC v. Falstaff Brewing Corp.*, 629 F.2d 62 (D.C. Cir. 1980) ........................................................12

*Seinfeld v. Barrett*, Fed. Sec. L. Rep. (CCH) P93,840, 2006 U.S. Dist. Lexis 14827 (D. Del. 2006) ................................................................................................5, 6, 8

*Shaev v. Saper*, 320 F.3d 373 (3d Cir. 2003) ................................................................11, 12

*Thorpe v. Cerbco, Inc.*, Fed. Sec. L. Rep. (CCH) P97,447, 1993 Del. Ch. Lexis 16 (Del. Ch. 1993) ................................................................................................14

*Tooley v. Donaldson, Lufkin & Jenrette, Inc.*, 845 A.2d 1031 (Del. 2004) ................................15

*Tracinda Corp. v. DaimlerChrysler AG*, 364 F. Supp. 2d 362 (D. Del. 2005) ............................12

*Tracinda Corp. v. DaimlerChrysler AG*, 502 F.3d 212 (3d Cir. 2007) ........................................12

*Vides v. Amelio*, 265 F. Supp. 2d 273 (S.D.N.Y. 2003) ................................................................17

## Statutes

I.R.C. § 162 (2006) ................................................................................................passim

Securities Exchange Act of 1934, 15 U.S.C. § 78a *et seq.* (2006) ............................................1, 11

## Other Authorities

I.R.S. Gen. Couns. Mem., IRS AM 2009-006, 2009 WL 2138881 (July 17, 2009) ......................7

## Rules

FED. R. CIV. P. 56(a) ................................................................................................4

**Regulations**

Treas. Reg. § 1.162-27 (1995) ............................................................................................passim

Plaintiff, Kenneth Hoch, by his attorneys, submits this brief in support of his motion for partial summary judgment for injunctive relief against payments and awards under the Qualcomm 2006 Long Term Incentive Plan, as amended. The motion is supported by the record.

## NATURE AND STAGE OF THE PROCEEDINGS

This is a stockholder's direct and derivative action concerning Qualcomm Incorporated ("Qualcomm" or the "Company"), a Delaware corporation, based on the distribution of a proxy statement that is materially false or misleading in violation of § 14(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78n(a) (2006), and the adoption of an executive compensation plan that claimed to conform to I.R.C. § 162(m) (2006) ("§ 162(m)" or "section 162(m)") but did not. Plaintiff also alleges claims against the individual defendants for breach of fiduciary duty, waste, and unjust enrichment. The individual defendants are the directors and certain officers of Qualcomm. Plaintiff filed the complaint on March 11, 2011. D.I. 1 (cpl.). The Company and the individual defendants moved to dismiss the complaint on April 18, 2011. D.I. 42 (def. mot. to dis.); D.I. 43 (def. 1st br.). Plaintiff submitted his answering brief in opposition on May 16, 2011. D.I. 46 (pl. br.). Defendants submitted their reply brief on June 2, 2011. D.I. 47 (def. 2nd br.). Because there is no genuine issue of material fact, plaintiff now moves for partial summary judgment, requesting judgment as a matter of law that defendants have violated § 14(a) of the Exchange Act and requesting that this Court enjoin payments and awards to the five officer-defendants under the executive compensation plan at issue.

## SUMMARY OF ARGUMENT

1.      Plaintiff moves for partial summary judgment because there are no material facts in dispute in this case and these facts demonstrate that defendants falsified, misrepresented or

withheld the fact that the 2011 proxy vote would not result in tax-deductible executive

compensation under § 162(m) in violation of § 14(a) of the Exchange Act.

   2.      Summary judgment is merited here because demand is excused.

   3.      Granting summary judgment here means the court should enjoin any awards and

payments that may be made to the five named officer-defendants under the executive

compensation plan at issue.

### STATEMENT OF THE FACTS

   Plaintiff has been a Qualcomm shareholder since October 29, 2010. In January 2011,

defendants distributed the Qualcomm proxy statement in anticipation of the March 8, 2011

shareholder meeting (the "2011 Proxy Statement"). The 2011 Proxy Statement represented that

if shareholders voted "[t]o approve the 2006 Long-Term Incentive Plan [(the "2006 LTIP")], as

amended," "options or stock appreciation rights granted by the Compensation Committee [will]

qualify as performance-based compensation, and the other awards subject to performance goals

may also qualify." D.I. 44-1, Ex. A (2011 Prxy. Stmt.), pp. 6 (item 3), 33. The 2011 Proxy

Statement stated that such compensation was being provided "[i]n accordance with applicable

regulations issued under Section 162(m)," for the purpose of making such performance-based

compensation deductible from Qualcomm's Federal Income Taxes. *Id.* The only "regulation

issued under Section 162(m)" is Treas. Reg. § 1.162-27 (1995).

   Within Treas. Reg. § 1.162-27, subsection (e)(4)(iv) requires that the

   material terms of the performance goals . . . be disclosed to and *reapproved by*
   shareholders no later than the *first shareholder meeting that occurs in the fifth
   year* following the year in which shareholders previously approved the
   performance goal.

(Emphasis added.) The material terms of the performance goals for the 2006 LTIP were first

approved by Qualcomm's shareholders on March 7, 2006. D.I. 44-2, Ex. B (2006 Prxy. Stmt.),

2

p. 2.  Therefore, defendants had until the first shareholder meeting in 2011 to gain reapproval of

the material terms of performance goals to ensure that the 2006 LTIP would continue to comply

with § 162(m).

The first shareholder meeting that occurred in 2011 was Qualcomm's Annual Meeting on

Tuesday, March 8, 2011.  *See* D.I. 44-1, Ex. A (2011 Prxy. Stmt.), p. 5.  During this meeting,

Qualcomm's shareholders were asked to either approve or disapprove the 2006 LTIP, "as

amended."  *Id.* at 6, 8, 23, 24, 34.  However, defendants also informed stockholders that if

stockholders rejected the 2006 LTIP, as amended, "the 2006 LTIP will continue in effect

pursuant to its current terms" and "the proposed amendments will not be implemented."  *Id.* at

34.

But Treas. Reg. § 1.162-27(e)(4)(i) states that shareholder approval *is not effective* "if the

compensation would be paid regardless of whether the material terms [of performance goals and

targets] are approved by shareholders."  By stating that defendants intended to pay executive

compensation under the 2006 LTIP whether stockholders voted for or against the 2006 LTIP, as

amended, the stockholders' re-approval of this plan *was ineffective* under Treas. Reg. § 1.162-

27(e)(4), and any compensation paid out under the 2006 LTIP, as amended, was not and will not

be deductible under § 162(m).

## ARGUMENT

Section 162(m) was created to give shareholders a binding vote on executive

compensation. Rather than provide plaintiff with such a vote, defendants, in 2011, set a floor to

any decision regarding executive compensation, stripping shareholders of their voting rights

granted by § 162(m).  Shareholders were told to approve performance goals and targets as

presented in 2011 or leave these goals and targets as they had been since 2006; shareholders

were not allowed to reject them.  Because such a vote does not comply with the regulations

issued under § 162(m), the 2011 vote was not effective, and executive compensation paid out

based on it will not be tax-deductible under § 162(m).  The 2011 Proxy Statement

representations to the contrary were therefore, materially false, in violation of § 14(a) of the

Exchange Act.  Thus, plaintiff now moves for partial summary judgment and requests injunctive

relief against compensation paid and awarded under the 2006 LTIP with respect to the five

named officer-defendants.

## I.   THE APPLICABLE STANDARD

The standard that applies to a motion for summary judgment is well settled. Rule 56(a) of

the Federal Rules of Civil Procedure requires that summary judgment be granted where movant

makes a two-part showing that  (1) "there is no genuine dispute as to any material fact and [; (2)]

the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).

As to the first part, while it is the moving party's burden to demonstrate that "there is no

genuine dispute as to any material fact," having done so the nonmoving party must "'come

forward with specific facts showing that there is a genuine issue for trial.'"  *Abbott Labs. v.*

*Lupin Ltd.*, 2011 U.S. Dist Lexis 53846 (D. Del. May 19, 2011) (quoting *Matsushita Elec. Indus.*

*Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (U.S. 1986)).  "To defeat a motion for summary

judgment, the non-moving party must 'do more than simply show that there is some

metaphysical doubt as to the material facts.'"  *Abbott Labs.*, 2011 U.S. Dist Lexis 53846, at *5-

*6 (quoting *Matsushita Elec. Indus. Co.*, 475 U.S. 574, 586-87); *see also Seinfeld v. Barrett*, Fed.

Sec. L. Rep. (CCH) P93,840, 2006 U.S. Dist. Lexis 14827, at *12 (D. Del. 2006).  In this

context, a "genuine" factual dispute exists only where "'the evidence is such that a reasonable

jury could return a verdict for the nonmoving party.'"  *Abbott Labs.*, 2011 U.S. Dist Lexis 53846,

at *6 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (U.S. 1986)). "[S]ummary judgment is mandated 'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case.'" *Abbott Labs.*, 2011 U.S. Dist Lexis 53846, at *6 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (U.S. 1986)).

As to the second part, although the issue of materiality for a claim under § 14(a) of Exchange Act is a "mixed question of law and fact," when

> the facts falsified, misrepresented or withheld are so obviously important to the shareholder's decision that reasonable minds cannot differ on the question of materiality and the underlying facts and inferences to be drawn from those facts are free from controversy, the question becomes one of law which may appropriately be decided by summary judgment.

*Gould v. American-Hawaiian S.S. Co.*, 535 F.2d 761, 771 (3d Cir. 1976); *see also Seinfeld v. Barrett*, 2006 U.S. Dist. Lexis 148, at *17.

## II.   PLAINTIFF IS ENTITLED TO SUMMARY JUDGMENT BECAUSE THERE ARE NO MATERIAL FACTS IN DISPUTE AND HE IS ENTITLED TO JUDGMENT AS A MATTER OF LAW

Plaintiff is entitled to summary judgment because there are no material facts in dispute. Here, the facts demonstrate that the 2011 Proxy Statement was false or misleading because it represented to shareholders that voting for the 2006 LTIP, as amended, would result in executive compensation that would be deductible from Qualcomm's federal income taxes under § 162(m), D.I. 44-1, Ex. A (2011 Prxy. Stmt.), p. 33. In fact, compensation paid out under the 2006 LTIP, as amended, cannot be deductible under § 162(m) because the 2011 Proxy Statement did not present shareholders with an up or down vote on performance goals and targets, as required by Treas. Reg. § 1.162-27(e)(4).

## A. No Material Fact Is in Dispute

In their motion to dismiss the complaint, defendants have not contradicted any of the facts provided above in the Statement of Facts, *supra* p. 2. Instead, their arguments rely only upon a different (and incorrect) interpretation of what is required by Treas. Reg. § 1.162-27(e)(4).

Defendants concede that plaintiff is "a Qualcomm shareholder." D.I. 43 (def. 1st br.), p. 1. They agree that Qualcomm distributed the 2011 Proxy Statement to gain "approval of the 2011 Amendments to the 2006 LTIP." *Id.* at 11-12 (referring to the language asking shareholders to approve "the 2006 Incentive Compensation Plan, as amended," D.I. 44-1, Ex. A (2011 Prxy. Stmt.), p. 23). Defendants agree that the 2011 Proxy Statement represented that if shareholders voted for the 2006 LTIP, as amended, compensation paid out under it "would qualify as 'performance-based compensation' for purposes of tax deductibility under § 162(m). . . ." D.I. 43 (def. 1st br.), p. 1 (footnote omitted). Defendants also agree that in order to comply with § 162(m), "under certain circumstances shareholders must approve the 'material terms of the performance goals.'" D.I. 47 (def. 2nd br.), p. 11 (quoting Treas. Reg. § 1.162-27(e)(4)(vi)). Defendants do not dispute the language of Treas. Reg. § 1.162-27(e)(4), nor do they suggest that the regulation does not apply to the Qualcomm's 2006 LTIP. Rather, aside from procedural arguments, defendants' entire dispute with plaintiff's claims is their contention that plaintiff has misinterpreted Treas. Reg. § 1.162-27(e)(4). D.I. 43 (def. 1st br.), pp. 12-15. This is a question of law and, therefore, summary judgment is merited in the instant case.

As there are no genuine issues of material fact, this matter is now ripe for summary judgment as to whether defendants violated § 14(a) of the Exchange Act.

## B.  Plaintiff Is Entitled to Judgment as a Matter of Law

Plaintiff is entitled to judgment as a matter of law because the 2011 Proxy Statement falsified, misrepresented or withheld the fact that the 2006 LTIP, as amended would not result in tax deductible compensation to Qualcomm no matter the result of the 2011 shareholder vote. The shareholder vote on the 2011 Proxy Statement was ineffective under Treas. Reg. § 1.162-27(e)(4) because it did not present shareholders with an up or down vote on performance targets and goals.  This ensured that the 2006 LTIP, as amended, could *not* award compensation that was tax-deductible under § 162(m), meaning that the entire purpose of presenting the executive compensation plan to shareholders for a vote had been mooted.

The undisclosed fact that the 2006 LTIP, as amended, could not provide tax-deductible compensation under § 162(m) is "so obviously important to the shareholder's decision that reasonable minds cannot differ on the question of materiality. . . ." *Gould*, 535 F.2d 761 at 771; *see also Seinfeld v. Barrett*, 2006 U.S. Dist. Lexis 148, at \*17.  This fact is "so obviously important" because the purpose of § 162(m) is "to align the performance incentive with the interests of shareholders." *See* I.R.S. Gen. Couns. Mem., IRS AM 2009-006, 2009 WL 2138881 (July 17, 2009).  Treas. Reg. § 1.162-27(e)(4)(iv) enables this purpose by providing shareholders with a vote every five years on performance goals and targets.  The Qualcomm 2011 Proxy Statement, however, refused to accord this goal; instead, it limited shareholders to a choice between performance goals as they existed since 2006 and the nearly identical performance goals presented in 2011.  Compare the performance goals and targets from 2006:

> Performance Measures may be one or more of the following, as determined by the Committee: (i) sales revenue; (ii) gross margin; (iii) operating margin; (iv) operating income; (v) pre-tax profit; (vi) earnings before interest, taxes and depreciation and amortization; (vii) net income; (viii) expenses; (ix) the market price of the Stock; (x) earnings per share; (xi) return on stockholder equity; (xii) return on capital; (xiii) return on net assets; (xiv) economic value added; (xv)

market share; (xvi) customer service; (xvii) customer satisfaction; (xviii) safety; (xix) total stockholder return; (xx) free cash flow; or (xxi) such other measures as determined by the Committee consistent with this Section 9.4(a). . . . Performance Targets may include a minimum, maximum, target level and intermediate levels of performance, with the final value of a Performance Award determined under the applicable Performance Award Formula by the level attained during the applicable Performance Period. A Performance Target may be stated as an absolute value or as a value determined relative to a standard selected by the Committee,

D.I. 44-2, Ex. B (2006 Prxy. Stmt.) p. 33 ¶ 9.4, with the performance goals and targets from

2011:

Performance Measures may be one or more of the following, as determined by the Committee: revenues; (ii) gross margin; (iii) operating margin; (iv) operating income; (v) earnings before tax; (vi) earnings before interest, taxes and depreciation and amortization; (vii) net income; (viii) expenses; (ix) the market price of the Stock; (x) earnings per share; (xi) return on stockholder equity; (xii) return on capital; (xiii) return on net assets; (xiv) economic value added; (xv) market share; (xvi) customer service; (xvii) customer satisfaction; (xviii) safety; (xix) total stockholder return; (xx) free cash flow; or (xxi) such other measures as determined by the Committee consistent with this Section 9.4(a). . . . Performance Targets may include a minimum, maximum, target level and intermediate levels of performance, with the final value of a Performance Award determined under the applicable Performance Award Formula by the level attained during the applicable Performance Period. A Performance Target may be stated as an absolute value or as a value determined relative to a standard selected by the Committee.

D.I. 44-1, Ex. A, p. 165-66 ¶ 9.4 (2011 Prxy. Stat.).  Defendants' ultimatum meant that

shareholders were not given what Treas. Reg. § 1.162-27(e)(4) intends: an up or down vote on

performance goals and targets.[1]

---

[1] Indeed, this is the only reading of Treas. Reg. § 1.162-27(e)(4) that makes sense: Comparing the performance goals in the proposed 2006 LTIP, as amended, with those in the original 2006 LTIP, as drafted in 2006, there has been no substantive change.  This means that defendants, when they drafted the 2011 Proxy Statement, offered shareholders a non-choice: approve the performance goals and targets now or we will continue to use the performance goals and targets that were approved in 2006, which were, in essence, the exact same thing.  If defendants are permitted to do this - offer a choice between substantively-identical performance goals - without

8

Here, shareholders who wished to reject Qualcomm's performance goals outright had a Hobson's choice: no matter what these shareholders thought, Qualcomm's executives would continue to receive payments under the 2006 LTIP according to performance goals these shareholders disagreed with. But, to prevent such an absurd result, Treas. Reg. § 1.162-27(e)(4)(i) states that shareholder approval *is not effective* "if the compensation would be paid regardless of whether the material terms [of performance goals and targets] are approved by shareholders." Therefore, because the 2011 Proxy Statement violated Treas. Reg. § 1.162-27(e)(4), payments under the 2006 LTIP, as amended, cannot be tax-deductible under § 162(m). Indeed, if this vote was upheld, the entire purpose of § 162(m) would be contradicted: instead of giving shareholders a real vote on whether to reapprove performance goals, shareholders would have an anemic choice between two sets of nearly identical goals and targets. Because the purpose of § 162(m) was mooted by the language of the 2011 Proxy Statement and because this fact was so obviously important to shareholder's decision, plaintiff is entitled to summary judgment in his favor.

*Shaev v. Saper*, 320 F.3d 373 (3d Cir. 2003), is on all fours with this case. In *Shaev*, a shareholder of Datascope Corp. challenged the disclosure of the executive compensation plan in the Datascope 2000 proxy statement. There, the complaint alleged that the Datascope proxy statement was false when it represented that the bonus paid under the plan, if approved by the stockholders, would be deductible under § 162(m). The complaint alleged that a bonus would be paid even if the stockholders rejected the Datascope executive compensation plan because the Datascope 2000 proxy statement said,

---

giving shareholders the option to reject these goals and targets outright, there would be no rational reason for Treas. Reg. § 1.162-27(e)(4)(iv) to exist.

"[I]n the event that the Management Incentive Plan is not approved by the shareholders of the Corporation, the Compensation Committee may grant Mr. Saper another bonus for fiscal year 2000, a portion of which may not be deductible under Section 162(m) of the Code."

*Shaev v. Saper*, 320 F.3d at 376 (quoting the Datascope proxy statement).

The Third Circuit held that the Datascope proxy statement disclosures were inadequate because

[p]ayments of the Saper bonus, even if the shareholders voted against it, also precluded the deduction.  The Regulations state that "the material terms of the performance goal under which the compensation is to be paid must be disclosed to and subsequently approved by the shareholders of the publicly held corporation before the compensation is paid.  The requirements of this paragraph . . . are not satisfied if the compensation would be paid regardless of whether the material terms are approved by shareholders." 26 C.F.R. § 1.162-27(e)(4)(i).  The Board's threat undermined the deductibility of the bonus even if the shareholders approved it.

The complaint accurately alleges that Datascope's Board made a materially false statement in the proxy statement when it stated that the bonus would be deductible if the shareholders approved it.  Regardless of the shareholders' approval, the bonus would not have been deductible under the Treasury Regulations, and the alleged false statement in the proxy statement is actionable.

*Shaev v. Saper*, 320 F.3d at 381.

Here, the 2011 Proxy Statement promised, "Should stockholder approval not be obtained, then the proposed amendments will not be implemented, and the 2006 LTIP will continue in effect pursuant to its current terms."  Therefore, as in *Shaev*, Qualcomm shareholders were instructed that even if they voted against the executive compensation plan, including its performance goals and targets, defendants would provide executive compensation according to identical performance goals and targets.  Because the 2011 Proxy Statement did not disclose that this scenario cannot result in tax-deductible compensation under § 162(m), plaintiff is entitled to judgment as a matter of law with regard to his § 14(a) claim.

The individual defendants are liable in this case because liability attaches under § 14(a) when a person allows the use of his or her name to solicit a proxy pursuant to a proxy statement that contains a materially false or misleading statement or omission. 15 U.S.C. § 78n(a); *Tracinda Corp. v. DaimlerChrysler AG*, 364 F. Supp. 2d 362, 393 (D. Del. 2005), *aff'd*, 502 F.3d 212 (3d Cir. 2007); *SEC v. Falstaff Brewing Corp.*, 629 F.2d 62, 68-69 (D.C. Cir. 1980), *cert. denied Kalmanovitz v. SEC*, 449 U.S. 1012 (1980). At bar, the names of the non-director defendants appear at least 20 times in the 2011 Proxy Statement in connection with the description of their compensation and stock ownership – the precise issue on which the stockholders were being asked to vote. D.I. 44-1, Ex. A (2011 Prxy. Stmt.), p. 13, 17, 18-22, 44, 82-84, 147-148, 185. In addition, the officer-defendants' names are so much a part of the Proxy Statement, and their consequent benefit is so great, that they have, in effect, "personally signed-off on it." *City of Roseville Employees' Ret. Sys. v. Horizon Lines*, 713 F. Supp. 2d 378, 391 (D. Del. 2010).

## III.    PRE-SUIT DEMAND IS EXCUSED

Here, Delaware law does not require pre-suit demand because the complaint states a direct claim and the derivative claims complain of actions that are not covered by the business judgment rule.

First, Delaware law does not require a pre-suit demand where, as here, a stockholder alleges a direct claim against officers and directors rather than a derivative claim on behalf of the corporation in which he owns stock. *Albert v. Alex Brown Mgmt. Servs., Inc.*, 2005 Del. Ch. Lexis 133, at *46 (Del. Ch. Aug. 26, 2005); *Chaffin v. GNI Group, Inc.*, 1999 Del. Ch. Lexis 182, at *25 (Del. Ch. Sept. 3, 1999).

Here, the direct claim seeks redress for defendants' interference with the plaintiff stockholder's right to vote, by misrepresenting in the 2011 Proxy Statement that the 2006 LTIP would be capable of paying out compensation that is tax deductible under § 162(m) if the stockholders voted for it. A stockholder in a § 14(a) case alleging that a proxy statement is false has "a right of action as to both derivative and direct causes." *J.I. Case Co. v. Borak*, 377 U.S. 426, 431 (U.S. 1964). Under Delaware law, a stockholder has a "direct" action when a board interferes with his right to an informed vote. *See Thorpe v. Cerbco, Inc.*, Fed. Sec. L. Rep. (CCH) P97,447, 1993 Del. Ch. Lexis 16, at *6 (Del. Ch. 1993). Such a case presents an "admixture" of direct and derivative claims. *In re Triarc Cos., Inc.*, 791 A.2d 872, 879 (Del. Ch. 2001); *see also Loral Space & Commc'n Inc. v. Highland Crusader Offshore Partners, L.P.*, 977 A.2d 867, 869-870 (Del. 2009) (set of facts can give rise to simultaneous direct and derivative claims).

The § 14(a) claim is also a direct claim because, under applicable Delaware law, it seeks "injunctive relief . . . in the form of corrective disclosures" and suspension of the 2006 Plan until a new stockholder vote can be held. D.I. 1 (Cpl.) at ¶ 46. *Grimes v. Donald*, 673 A.2d 1207, 1213 (Del. 1996), *overruled in part on other grounds by Brehm v. Eisner*, 746 A.2d 244, 256 (Del. 2000); *see also Tooley v. Donaldson, Lufkin & Jenrette, Inc.*, 845 A.2d 1031, 1035-1039 (Del. 2004).

In addition, the direct relief sought at bar, namely rescission of a corporate plan and a new vote benefiting the stockholder (plaintiff) directly, has been confirmed by Delaware courts to be a direct claim. *Grayson v. Imagination Station, Inc.*, 2010 Del. Ch. Lexis 169, at *12-*20 (Del. Ch. Aug. 16, 2010); *San Antonio Fire & Police Pension Fund v. Bradbury*, 2010 Del. Ch. Lexis 218, at *29-*32 (Del. Ch. Oct. 28, 2010).

12

Demand is also excused in this case because each member of the board of directors is interested, meaning each "expect[s] to derive [a] personal financial benefit from [the transaction] in the sense of self-dealing, as opposed to a benefit which devolves upon the corporation or all stockholders generally." *Aronson v. Lewis*, 473 A.2d at 812.

Each of the defendants is able to receive compensation under the 2006 LTIP, as amended, either as directors or as officers or both, and each stood to receive greater compensation if shareholders voted to approve 2006 LTIP, as amended, in 2011: Directors and officers are eligible to receive "Awards" under the 2006 LTIP, as amended. D.I. 44-1, Ex. A (2011 Prxy. Stmt.), pp. 160 ¶ 5.1. "Award[s]" include, among other compensation, shares in Qualcomm. *Id.* at 152 ¶ 2.1(b). The maximum number of Qualcomm shares that could be awarded under the 2006 LTIP would be increased by approximately 65 million if shareholders voted for the 2006 LTIP, as amended, in 2011. *Id.* at 23.

Since every director is eligible to participate in the 2006 LTIP, every director is interested. *President & Fellows of Harvard College v. Glancy*, 2003 Del. Ch. Lexis 25, at *68 (Del. Ch. Mar. 21, 2003) (directors are interested in a plan if they are "participants"); *see also Resnik v. Woertz*, 2011 U.S. Dist. Lexis 31868, at *40-*44 (D. Del. 2011) (pre-suit demand excused where the board approved a defective § 162(m) plan in which each board member was materially interested). In addition, because the 2006 LTIP, as amended, stood to provide all of the defendants (including the non-employee directors) greater benefits than they would have had in previous years, directors are interested and demand is excused. *MCG Capital Corp. v. Maginn*, 2010 Del. Ch. Lexis 87, *65-*66 (Del. Ch. 2010) ("Under the first prong of *Aronson*, demand may be excused as to a director who has a direct financial interest in the challenged transaction. In this case, [two directors] were . . . interested in the Compensation Increases").

Finally, demand is also excused under the second prong of *Aronson* because the distribution of a false proxy statement is not a product of a valid exercise of business judgment. The business judgment rule applies only to matters of business. It does not apply to protect directors when they make disclosures to stockholders because such a disclosure decision "is not a decision concerning the management of business." *In re Anderson, Clayton S'holders' Litig.*, 519 A.2d 669, 675 (Del. Ch. 1986); *see also In re Tri-Star Pictures, Inc. Litig.*, 1990 Del. Ch. Lexis 80, at \*25 (Del. Ch. Jun. 14, 1990); *see also Katz v. Pels*, 774 F. Supp. 121, 127 n.5 (S.D.N.Y. 1991) ("false Proxy claims are not subject to the demand requirement of Delaware Chancery Court Rule 23.1" in a stockholder's derivative action); *Vides v. Amelio*, 265 F. Supp. 2d 273, 275-76 (S.D.N.Y. 2003) (holding the same).

Indeed, it is notable that Third Circuit Judge Smith, when a district judge, determined in *In re Westinghouse Sec. Litig.*, 832 F. Supp. 989, 997-98 (W.D. Pa. 1993), that the business judgment rule does not apply to violations of § 14(a) of the Exchange Act, because this "would emasculate the federal policy" of preventing management from obtaining shareholder approval by deceptive or inadequate disclosure in proxy solicitations.

Therefore, as demand is excused, this matter is now ripe for summary judgment as to plaintiff's § 14(a) claim.

## IV.   THE COURT SHOULD ENJOIN AWARDS AND PAYMENTS TO THE FIVE NAMED OFFICER-DEFENDANTS UNDER THE 2006 LTIP, AS AMENDED

Enjoining payments under the 2006 LTIP, as amended, is available as a remedy under § 14(a) of the Exchange Act. *Diceon Electronics, Inc. v. Calvary Partners, L.P.*, 772 F. Supp. 859, 866 (D. Del. 1991) (federal court concluded "injunctive relief" is one of the remedies it can provide). With respect to this motion for summary judgment, plaintiff simply requests that this court grant an injunction with regard to any payments and awards made to the five named

14

officer-defendants (Jacobs, P.; Keitel; Altman; Mollenkopf; and Rosenberg) under the 2006

LTIP.  Such injunctive relief can prevent payment of the non-deductible compensation before it

is paid or awarded, preventing further damage to Qualcomm.

An injunction will not irreparably interfere with Qualcomm's compensation procedures.

Should this court grant the injunction, the directors could re-solicit stockholder approval with a

proxy statement that does not violate § 14(a) of the Exchange Act or Delaware Law.

**CONCLUSION**

For the foregoing reasons, plaintiff respectfully submits that the court should grant his

motion for partial summary judgment and enjoin all payments or awards to the five named

officer-defendants under the 2006 LTIP, as amended.

Respectfully submitted,

Dated:  June 30, 2011

**FARNAN LLP**

/s/ Brian E. Farnan
Joseph J. Farnan, III (Bar No. 3945)
Brian E. Farnan (Bar No. 4089)
919 N. Market Street, 12th Floor
Wilmington, Delaware 19801
Tel.:  (302) 777-0300
Fax.:  (302) 777-0301
bfarnan@farnanlaw.com

*Attorneys for Plaintiff*

*Of Counsel:*

BARRACK, RODOS & BACINE
Alexander Arnold Gershon
Michael A. Toomey
425 Park Avenue, Suite 3100
New York, New York 10022
Tel: (212) 688-0782

BARRACK, RODOS & BACINE
Leonard Barrack
Daniel E. Bacine
Lisa M. Lamb
3300 Two Commerce Square
2001 Market Street
Philadelphia, Pennsylvania 19103
Tel: (215) 963-0600