# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| KENNETH HOCH, | : | |
|     Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| BARBARA T. ALEXANDER, et al., | : | No. 11-217 |
|     Defendants. | : | |

## MEMORANDUM

Schiller, J.                                                                                                 July 1, 2011

Kenneth Hoch brings this litigation directly and derivatively against Defendants, who include directors and executive officers of Qualcomm. He alleges that Defendants violated federal securities laws and their duties under Delaware law when they issued a false or misleading proxy statement regarding the tax-deductible status of executives' compensation. Defendants have filed a motion to dismiss, which the Court will grant in part and deny in part.

## I. BACKGROUND

Kenneth Hoch, a Qualcomm shareholder, filed this lawsuit against Qualcomm's board of directors and certain senior officers for violations of the securities laws. He brings his claims directly and derivatively, claiming that Qualcomm issued, filed and distributed a false or misleading proxy statement.

Hoch's lawsuit seeks only equitable relief based on the proxy statement and on Defendants' breach of fiduciary duty, and the consequential harm to Qualcomm caused by Defendants' actions. (Compl. ¶ 5.) Specifically, he wants the false statements in the proxy statement corrected and seeks to void the shareholders' vote approving a long term incentive plan. According to the Complaint,

the following Defendants are members of Qualcomm's board of directors and collectively authorized the distribution of the allegedly false or misleading proxy statement: Barbara Alexander, Stephen Bennett, Donald Cruickshank, Raymond Dittamore, Thomas Horton, Irwin Jacobs, Paul Jacobs, Robert Kahn, Sherry Lansing, Duane Nelles, Francisco Ros, Brent Scowcroft, and Marc Stern (collectively the "Defendant directors"). (*Id.* ¶ 3.) The following Defendants are alleged to be Qualcomm's named executive officers as defined by the Code of Federal Regulations and set forth in the Internal Revenue Code ("the Code"): Paul Jacobs, William Keitel, Steven Altman, Stephen Mollenkopf, and Donald Rosenberg (collectively the "Defendant executives"). (*Id.* ¶ 8.) Bennett, Scowcroft, and Stern are also members of Qualcomm's compensation committee and "assist the Board in fulfilling its responsibilities for the compensation of the Company's executive officers and non-employee directors." (*Id.* ¶ 9.)

An annual stockholders' meeting was scheduled for March 8, 2011. (*Id.* ¶ 12.) The Defendant directors authorized the distribution of a proxy statement, which solicited stockholders' proxies for approval of an amended 2006 Long Term Incentive Plan. ("LTIP"). (*Id.*) The LTIP provides for stock-based compensation and for performance awards paid in equity or in cash meant to qualify under the Code. (*Id.* ¶ 13.) The LTIP increased the maximum number of shares that Qualcomm could issue under the program, changed the ratio used to count awards under the program, and provided "added flexibility for the Compensation Committee by allowing it to include terms and conditions in award agreements for accelerating the vesting of full value awards in connection with retirement at or after normal retirement age." (Defs.' Motion to Dismiss, Skaistis Decl. Ex. A [Proxy Statement] at 14.)

Hoch asserts that the Code subjects public corporations, such as Qualcomm, to special

2

restrictions regarding executive compensation. Although the Code generally allows public corporations to claim a deduction for "a reasonable allowance for salaries or other compensation for personal services actually rendered," it also imposes requirements that must be met if annual compensation to named executive officers in excess of $1 million can be deducted. (*Id.* ¶ 14.) "Compensation paid to the Company's Covered Employees in excess of $1 million per year is not deductible unless it is paid in compliance with the requirements of IRC § 162(m) and its implementing regulation, Treas. Reg. § 1.162-27." (*Id.*) This deduction limit aims to prevent excessive executive compensation and to align the performance incentives of certain company executives with the interests of shareholders. (*Id.* ¶ 16.) Additionally, for the deduction to apply, it must be objectively determined, performance-based, and approved by the shareholders. (*Id.* ¶ 17.)

Hoch claims that Qualcomm's LTIP does not qualify as tax-deductible. (*Id.* ¶ 18.) As outlined by the proxy statement, the LTIP would increase the number of shares that Qualcomm could issue and change the ratio used to count awards granted under the plan. (*Id.* ¶ 21.) The proxy statement also details how the LTIP would render performance-based compensation tax-deductible. (*Id.*) The proxy statement notes that Qualcomm's board retains the discretion to eliminate or reduce, but not increase, the performance-based compensation for covered employees in accordance with the Code and that a committee of outside directors must act with respect to performance awards "to the extent compliance with Section 162(m) of the Code is desired." (*Id.* ¶ 22.) The LTIP "provides for appropriate adjustments in the number and class of shares subject to the 2006 LTIP and to any outstanding awards, in the Section 162(m) of the Code per employee grant limit (see 'Federal Income Tax Information – Potential Limitations on Company Deductions'), and in the exercise price per share of any outstanding awards." (*Id.* ¶ 23.) The proxy statement also states: "Stock options

3

granted under the 2006 LTIP also qualify as performance-based compensation. Only actual shares distributed that are above the [performance stock units] target amount will qualify as deductible compensation under Section 162(m). From time-to-time, we may pay compensation to our Section 162(m) covered officers that may not be tax deductible if there are compelling business reasons to do so." (*Id*. ¶ 24.) The proxy statement represents that "options or stock appreciation rights granted by the Compensation Committee qualify as performance-based compensation, and the other awards subject to performance goals may also qualify." (*Id*.)

Hoch alleges that these representations about the availability of tax deductions were materially false or misleading because "[p]ayments made regardless of stockholder approval are not tax deductible." (*Id*. ¶ 25.) The proxy statement states that if the stockholders did not approve the LTIP, Qualcomm would not implement the amendments and the 2006 LTIP would remain in effect. (*Id*.) Thus, even if the stockholders voted in favor the of the LTIP, Qualcomm would not be eligible for the tax deductions. (*Id*.) "Because the defendants would still pay performance-based compensation under the 2006 LTIP as unamended, regardless of stockholder approval, no vote of the stockholders would make such payments deductible . . . [t]herefore, contrary to the representations and omissions in the Proxy Statement, awards under the 2006 LTIP as amended will not be tax-deductible even if the stockholders approve it." (*Id*.)

Hoch claims that the Defendant directors' breaches of their duties of loyalty and good faith have injured Qualcomm and its shareholders. (*Id*. ¶¶ 27-28, 30.) The payment of compensation that is not tax-deductible also constitutes waste and violates public policy. (*Id*. ¶¶ 31-32.) Hoch's Complaint brings both direct and derivative claims. He failed to make a demand on Qualcomm, but posits that demand is not required because "none is required for a direct claim seeking redress for

wrongs to fair corporate suffrage and other wrongful acts of the Director Defendants renders any demand requirement as futile." (*Id*. ¶ 35.) Hoch also claims that the Board of Directors is either interested in the transactions and events at issue and/or otherwise lacks independence because: (1) all thirteen members of the board of directors are eligible to participate in the 2006 LTIP; and (2) three members of Qualcomm's Board of Directors are members of the Compensation Committee and are thus charged with making compensation recommendations under the LTIP. (*Id*. ¶ 36.) Hoch further asserts that Delaware law excuses the demand requirement when the challenged act of the board of directors is not the product of a valid exercise of business judgment and that the misrepresentations and omissions here are not protected by the business judgment rule. (*Id*. ¶ 38.) Count I is a direct claim for the Proxy Statement's false and misleading representations. (*Id*. ¶¶ 41-46.) Count II is a derivative claim against the Defendant Directors and the Defendant Executive Directors for breaching their duties of loyalty and care. (*Id*. ¶¶ 47-50.) Count III is a derivative claim against the Defendant directors and the Defendant executives and argues that their actions constitute waste, contravene public policy, and injure Qualcomm. (*Id*. ¶¶ 51-55.) Plaintiff seeks, *inter alia*, an injunction ordering the correction of the false statements in the 2011 Proxy Statement and an order declaring void the vote of the stockholders for approval of the 2006 LTIP.

## II.  STANDARD OF REVIEW

In reviewing a motion to dismiss for failure to state a claim, a district court must accept as true all well-pleaded allegations and draw all reasonable inferences in favor of the non-moving party. *See Bd. of Trs. of Bricklayers and Allied Craftsman Local 6 of N.J. Welfare Fund v. Wettlin Assocs.*, 237 F.3d 270, 272 (3d Cir. 2001). A court need not, however, credit "bald assertions" or "legal

conclusions" when deciding a motion to dismiss. *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997); *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).

"Factual allegations [in a complaint] must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To survive a motion to dismiss, a complaint must include "enough facts to state a claim to relief that is plausible on its face." *Id*. at 570. Although the federal rules impose no probability requirement at the pleading stage, a plaintiff must present "enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element[s]" of a cause of action. *Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. Simply reciting the elements will not suffice. *Id*. (concluding that pleading that offers labels and conclusions without further factual enhancement will not survive motion to dismiss); *see also Phillips*, 515 F.3d at 231.

The Third Circuit Court of Appeals has directed district courts to conduct a two-part analysis when faced with a 12(b)(6) motion. First, the legal elements and factual allegations of the claim should be separated, with the well-pleaded facts accepted as true but the legal conclusions disregarded. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009). Second, the court must make a common sense determination of whether the facts alleged in the complaint are sufficient to show a plausible claim for relief. *Id*. at 211. If the court can only infer the mere possibility of misconduct, the complaint must be dismissed because it has alleged – but has failed to show – that the pleader is entitled to relief. *Id*.

When faced with a motion to dismiss for failure to state a claim, courts may consider the

6

allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim. *Lum v. Bank of Am.,* 361 F.3d 217, 222 n.3 (3d Cir. 2004). A district court may also consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document. *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

### III. DISCUSSION

#### A. Demand

Defendants contend that the Complaint should be dismissed because Hoch did not make the required demand on Qualcomm before bringing this lawsuit. (Br. in Supp. of Defs.' Mot. to Dismiss at 6-11.) Hoch counters that his first claim for relief is a direct claim for which no demand is required. (Pl.'s Br. in Opp'n to Defs.' Mot. to Dimiss [Pl.'s Opp'n] at 3-6.) He also contends that demand is excused for his derivative claims. (*Id*. at 6-11.)

Although Delaware law permits shareholders to bring derivative lawsuits on behalf of corporations, the directors are charged with running the affairs of the corporation. *Blasband v. Rales*, 971 F.2d 1034, 1047 (3d Cir. 1992). Whether or not to sue on behalf of the corporation is left to the directors of the corporation; therefore Delaware law requires a shareholder to demand the corporation pursue the claim before a shareholder may do so on the corporation's behalf. *Id*. at 1048. The demand requirement "is not a mere formality, but rather is an important aspect of Delaware's substantive law." *Id*. However, if demand would be futile, it is excused. *See White v. Panic*, 783 A.2d 543, 550 (Del. 2001). When determining whether demand is excused, a court must answer: (1) whether threshold presumptions of director disinterest or independence are rebutted by well-

7

pleaded facts; and, if not, (2) whether the complaint pleads particularized facts sufficient to create a reasonable doubt that the challenged transaction was the product of a valid exercise of business judgment. *Levine v. Smith*, 591 A.2d 194, 205 (Del. 1991); *accord Aronson v. Lewis*, 473 A.2d 805, 814 (Del. 1984). Demand is excused if either of these two inquiries is met. *In re J.P. Morgan Chase & Co. S'holder Litig.*, 906 A.2d 808, 820 (Del. Ch. 2005).

### 1. Direct claim

Whether a claim is classified as direct or derivative depends on: (1) whether the shareholder or the corporation suffered the alleged harm; and (2) who would receive the benefit of any remedy. *Grayson v. Imagination Station, Inc.*, Civ. A. No. 5051, 2010 WL 3221951, at *4 (Del. Ch. Aug. 16, 2010). A claim is direct if the injury suffered by the shareholder is "independent of any alleged injury to the corporation." *Tooley v. Donaldson, Lufkin, & Jenrette, Inc.*, 845 A.2d 1031, 1039 (Del. 2004). The shareholder must further demonstrate that the duty breached was owed to the stockholder and that he or she can prevail without showing an injury to the corporation. *Grayson*, 2010 WL 3221951, at *4. When deciding if a claim is direct or derivative, a court must read the complaint as a whole to determine the nature of the alleged wrong and the relief that may be ordered. *See id.*; *In re NYMEX S'holder Litig.*, Civ. A. Nos. 3621, 3835, 2009 WL 3206051, at *9 (Del. Ch. Sept. 30, 2009).

The Court concludes that Hoch has asserted both direct and derivative claims. The direct claim accuses Defendants of disseminating materially false statements to the stockholders and states that the shareholders have been injured as a result of the dissemination of the false statements. (Compl. ¶¶ 42-44.) Hoch further contends that the misleading statements provided to shareholders interfered with their ability to cast an informed vote. (Pl.'s Opp'n at 4.) "Where it is claimed that

8

a duty of disclosure violation impaired the stockholders' right to cast an informed vote, that claim is direct." *Thornton v. Bernard Techs.*, Civ. A. No. 962, 2009 WL 426179, at *3 (Del. Ch. 2009); *In re J.P. Morgan Chase & Co. S'holder Litig.*, 906 A.2d 766, 772 (Del. 2006).

The problem with Hoch's direct claim, however, is that there is no link between the alleged misstatements in the proxy statement and actual economic harm. For his direct claim, Hoch alleges that "Defendants have injured the plaintiff directly by providing materially false information" and that as a result, he "has been and will be injured." (Compl. ¶¶ 43-44.) As a recent case in this District concluded, a direct claim alleging a deprivation of the right to a fully informed vote and seeking only corrective disclosures and a new vote fails to meet the loss causation requirement. *Resnik v. Woertz*, Civ. A. Nos. 10-527 & 10-603, 2011 WL 1184739, at *12 (D. Del. Mar. 28, 2011).

### 2. Derivative claims

Having reviewed the allegations in the Complaint, the Court concludes that Hoch has properly pled that demand is excused because he properly challenged Defendants' independence. According to the Complaint, all of the members of the board of directors are eligible to participate in the 2006 LTIP and thus have an interest in receiving such payments. (Compl. ¶ 36.) Additionally, three members of the board of directors are members of the Compensation Committee and are charged with making recommendations about incentive compensation. (*Id*.)

Although it is a close question as to whether Hoch has properly interpreted the proxy statement, this Court cannot conclude at this stage of the proceedings that his Complaint fails to state a claim. The parties dispute, among other things, whether certain treasury regulations apply as well as the meaning of the Proxy Statement. But at this stage, Hoch has properly pled that a material misstatement interfered with the voting rights of shareholders and that the false proxy statement

breached Defendants' duties of loyalty and good faith and constituted waste. *See Resnik*, 2011 WL 1184739, at *12-13.

## IV. CONCLUSION

The Court concludes that the direct claim in Hoch's Complaint must be dismissed but that his derivative claims may proceed. An Order consistent with this Memorandum will be docketed separately.