IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

KENNETH HOCH,

                       Plaintiff,

    v.

BARBARA T. ALEXANDER, STEPHEN M.
BENNETT, DONALD G. CRUICKSHANK,
RAYMOND V. DITTAMORE, THOMAS W.
HORTON, IRWIN M. JACOBS, PAUL E. JACOBS,
ROBERT E. KAHN, SHERRY LANSING, DUANE
NELLES, FRANCISCO ROS, BRENT
SCOWCROFT, MARC I. STERN, WILLIAM E.
KEITEL, STEVEN R. ALTMAN, STEVEN M.
MOLLENKOPF, DONALD J. ROSENBERG and
QUALCOMM INCORPORATED,

                       Defendants,

    --and--

QUALCOMM INCORPORATED,

                Nominal Defendant.

C.A. No. 11-217-RGA

**DEFENDANTS' BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO
AMEND COMPLAINT**

OF COUNSEL:

Evan R. Chesler
Rachel G. Skaistis
CRAVATH, SWAINE & MOORE LLP
Worldwide Plaza
825 Eighth Avenue
New York, New York 10019
Tel:  (212) 474-1000
EChesler@cravath.com
RSkaistis@cravath.com

Dated:  April 20, 2012
1056300 / 36664

Richard L. Horwitz (#2246)
Peter J. Walsh, Jr. (#2437)
Matthew D. Stachel (#5419)
Potter Anderson & Corroon LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE19801
Tel:  (302) 984-6000
rhorwitz@potteranderson.com
pwalsh@potteranderson.com
mstachel@potteranderson.com

Attorneys for Defendants

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES .............................................................................................. ii

EXPLANATION OF CITATION FORMS ........................................................................ iv

NATURE AND STAGE OF PROCEEDINGS ...................................................................1

SUMMARY OF ARGUMENT ..........................................................................................3

STATEMENT OF FACTS .................................................................................................4

ARGUMENT .....................................................................................................................6

I.      THE LEGAL STANDARD ....................................................................................6

II.     IT WOULD BE FUTILE TO ADD THE PROPOSED SECTION 14(A) CLAIMS
        (PROPOSED COUNTS VI AND VII) ...................................................................7

        A.      Proposed Counts VI and VII Are Time-Barred ...........................................7

        B.      The Proposed § 14(a) Claims Fail to State a Claim...................................10

        C.      Plaintiff Does Not Adequately Plead Loss Causation ...............................11

        D.      Plaintiff Does Not Adequately Plead Negligence......................................13

III.    IT WOULD BE FUTILE TO ADD THE PROPOSED DELAWARE LAW
        CLAIMS (COUNTS IV AND V) ..........................................................................14

CONCLUSION................................................................................................................17

## TABLE OF AUTHORITIES

Page(s)

**Cases**

Ash v. LFE Corp., 525 F.2d 215 (3d Cir. 1975) ................................................................14

Ashcroft v. Iqbal, 556 U.S. 662 (2009) ..........................................................................13

Bensel v. Allied Pilots Ass'n, 387 F.3d 298 (3d Cir. 2004) .................................................8

Bertoglio v. Tex. Int'l Co., 488 F. Supp. 630 (D. Del. 1980) ............................................14

Bolger v. First State Fin. Servs., 759 F. Supp. 182 (D.N.J. 1991) .....................................14

Cowell v. Palmer Twp., 263 F.3d 286 (3d Cir. 2001) .........................................................8

Cureton v. Nat'l Collegiate Athletic Ass'n, 252 F.3d 267 (3d Cir. 2001) ...........................7

Del Sontro v. Cendant Corp., 223 F. Supp. 2d 563 (D.N.J. 2002) ......................................7

Gillespie v. Janey, 441 Fed. Appx. 890 (3d Cir. 2011) .......................................................8

Gould v. American-Hawaiian S.S. Co., 535 F.2d 761 (3d Cir. 1976) ...............................13

Gradient OC Master, LTD. v. NBC Universal, Inc., 930 A.2d 104 (Del. Ch. 2007) ........14

Henderson v. Diguglielmo, 138 Fed. Appx. 463 (3d Cir. 2005) .........................................9

Hoch v. Alexander, Civ. A. No. 11-217, 2011 WL 2633722 (D. Del.
    July 1, 2011) ...........................................................................................2, 3, 12

In re Exxon Mobil Corp. Sec. Litig., 387 F. Supp. 2d 407 (D.N.J. 2005), aff'd, 500 F.
    189 (3d Cir. 2007) ...........................................................................................7

In re Exxon Mobil Corp. Sec. Litig., 500 F.3d 189 (3d Cir. 2007) ....................................7

In re Gen. Motors Class H S'holders Litig., 734 A.2d 611 (Del. Ch. 1999) ....................15

In re NAHC, Inc. Sec. Litig., 306 F.3d 1314 (3d Cir. 2002) ..............................................7

In re Reliance Sec. Litig., 135 F. Supp. 2d 480 (D. Del. 2001) ........................................13

Levitt Corp. v. Office Depot, Inc., C.A. No. 3622-VCN, 2008 Del. Ch. LEXIS 47 (Del.
    Ch. Apr. 14, 2008) ...........................................................................................16

Morse v. Lower Merion Sch. Dist., 132 F.3d 902 (3d Cir. 1997) .....................................13

Petroleos Mexicanos Refinacion v. M/T King A, 554 F.3d 99 (3d Cir. 2009) ....................9

ii

Resnik v. Woertz, 774 F. Supp. 2d 614 (D. Del. 2011)................................................12, 13

Rosenberg v. Nabors Indus., Inc., CIV.A. H021942, 2002 WL 1431820 (S.D. Tex. June 14, 2002) ...........................................................................................................11

Seinfeld v. Becherer, 461 F.3d 365 (3d Cir. 2006)..............................................................4

Seinfeld v. O'Connor, 774 F. Supp. 2d 660 (D. Del. 2011) ................................................2

Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc., 552 U.S. 148 (2008)..............12

Walsh Sec. Inc. v. Cristo Prop., Civ. Action No. 97-3496, 2008 WL 4792544 (D.N.J. Oct. 31, 2008) ...........................................................................................................9

Williams v. Geier, C.A. No. 8456, 1987 Del. Ch. LEXIS 436 (Del. Ch. May 20, 1987) .16

Williams v. Geier, 671 A.2d 1368 (Del. 1996)..................................................................17

## Statutes & Rules

15 U.S.C. § 78u-4(b)(4) ....................................................................................................12

Fed. R. Civ. P. 8...............................................................................................................13

Fed R. Civ. P. 15(c)(1)(B) ..................................................................................................8

I.R.C. § 162(m) ........................................................................................................2, 3, 5, 8

## Other Authorities

17 C.F.R. § 240.14a-1(f)......................................................................................................9

17 C.F.R. § 240.14a-1(g) .....................................................................................................9

17 C.F.R. § 240.14a-3(e)(1)(i)(D) .......................................................................................9

17 C.F.R. § 240.14a-4 ..........................................................................................................9

17 C.F.R. § 240.14a-4(a)(3)................................................................................................10

17 C.F.R. § 240.14-4(b) .....................................................................................................11

17 C.F.R. § 240.14a-4(b)(1)...............................................................................................11

17 C.F.R. § 240.14a-101......................................................................................................9

26 C.F.R. § 1.162-27(e)(4)(i)...............................................................................................5

## EXPLANATION OF CITATION FORMS

The following citation forms are used in this brief:

- "Skaistis Declaration" or "Skaistis Decl." for references to the Declaration of Rachel G. Skaistis, dated April 20, 2012.

- "Ex." for references to documents attached as exhibits to the Skaistis Declaration.

- "Proxy Statement" for references to the Qualcomm Incorporated Proxy Statement Pursuant to Section 14(a) of the Securities Exchange Act of 1934 (Form DEF 14A) (January 19, 2011) (Ex. A).

- "11/29/11 Letter" for references to the November 29, 2011, letter from Rachel G. Skaistis to A. Arnold Gershon and William J. Ban (Ex. B).

- "2/29/12 Tr." for references to the transcript of the February 29, 2012, Status Conference (Ex. C).

- "1/12/06 DEF 14A" for references to the Qualcomm Incorporated Proxy Statement Pursuant to Section 14(a) of the Securities Exchange Act of 1934 (Form DEF 14A) (January 12, 2006) (Ex. D).

- "4/23/08 10-Q" for references to the Qualcomm Incorporated Quarterly Report Pursuant to Section 13 or 15(d) of the Securities Exchange Act of 1934 (Form 10-Q) (April 23, 2008) (Ex. E).

- "3/8/10 8-K" for references to the Qualcomm Incorporated Current Report Pursuant to Section 13 or 15(d) of the Securities Exchange Act of 1934 (Form 8-K) (March 8, 2010) (Ex. F).

- "Voting Card" for references to the form Voting Card, filed January 19, 2011 (Ex. G).

- "3/14/11 8-K" for references to the Qualcomm Incorporated Current Report Pursuant to Section 13 or 15(d) of the Securities Exchange Act of 1934 (Form 8-K) (March 14, 2011) (Ex. H).

- "Compl." or "Complaint" for references to the Verified Complaint, filed March 11, 2011.  (D.I 1.)

- "Defs. MTD" for references to the Opening Brief in Support of Defendants' Motion to Dismiss, filed April 18, 2011.  (D.I. 43.)

- "Defs. Reply MTD" for references to the Reply Brief in Further Support of Defendants' Motion to Dismiss, filed June 2, 2011.  (D.I. 47.)

- "Joint Status Report" for references to the Joint Status Report, filed December 23, 2011. (D.I. 65.)

- "Pl. Mot." for references to Plaintiff's Motion for Leave to Amend Complaint, filed March 23, 2012.  (D.I. 76.)

- "Proposed Compl." or "Proposed Complaint" for references to plaintiff's proposed Verified Complaint, attached as Exhibit A to Pl.'s Mot.

Defendants Qualcomm Incorporated ("Qualcomm" or the "Company") and Barbara T. Alexander, Stephen M. Bennett, Donald G. Cruickshank, Raymond V. Dittamore, Thomas W. Horton, Irwin M. Jacobs, Paul E. Jacobs, Robert E. Kahn, Sherry Lansing, Duane Nelles, Francisco Ros, Brent Scowcroft, Marc I. Stern, William E. Keitel, Steven R. Altman, Steven M. Mollenkopf and Donald J. Rosenberg (collectively the "Individual Defendants") respectfully submit this Brief in Opposition to Plaintiff's Motion for Leave to Amend Complaint.

## NATURE AND STAGE OF PROCEEDINGS

More than a year after filing his initial Complaint, plaintiff seeks to amend his pleadings, proposing to add four new claims (two under federal law and two under state law). Plaintiff characterizes his request to amend as an effort to "clarif[y] and refine[] certain factual allegations contained in the original Complaint". (Pl. Mot. ¶ 6.)   However, the majority of the proposed amendments consist of entirely new factual assertions that are unrelated to the allegations contained in the original Complaint.

Defendants submit that rather than attempting to enhance his claims, plaintiff is instead trying to plead a wholly different case in direct response to Qualcomm's recent discussions with the Internal Revenue Service ("IRS"), which the Company believes -- as apparently does plaintiff -- likely will moot plaintiff's lawsuit.  Defendants further submit that the Court should deny leave to amend as futile:  the claims plaintiff seeks to add would not survive a motion to dismiss.  Among other things, plaintiff's proposed federal claims are time-barred, and they fail adequately to plead the required legal elements.  Plaintiff's proposed state-law claims for coercion have no basis in law or fact.

On January 19, 2011, Qualcomm filed a Proxy Statement (the "Proxy Statement") seeking shareholder approval of its 2006 Long-Term Incentive Plan as amended (the "2011 Amended LTIP").  (See infra p. 5.)  The Proxy Statement informed shareholders that certain

prospective payments to senior management pursuant to the 2011 Amended LTIP would qualify as "performance-based compensation" for purposes of tax deductibility under § 162(m) of the Internal Revenue Code. (Id.)[1] At the Company's annual meeting on March 8, 2011, shareholders overwhelmingly approved the 2011 Amended LTIP. (Id.)

On March 11, 2011, plaintiff filed his Complaint, claiming that the shareholder vote on March 8 failed to comply with § 162(m) and that the Proxy Statement was therefore false and misleading because its statements regarding the tax deductibility of prospective payments under the 2011 Amended LTIP were wrong. (See Compl. ¶¶ 25, 41-55.) The Complaint asserted a proxy statement violation claim under § 14(a) of the Securities Exchange Act of 1934 (Count I), and two Delaware law claims for breach of fiduciary duty and corporate waste (Counts II and III).

Defendants moved to dismiss the Complaint in its entirety on numerous grounds, including that: (i) the § 162(m) tax theory underlying both plaintiff's federal and state claims was incorrect as a matter of law; and (ii) plaintiff's § 14(a) claim did not adequately plead loss causation or negligence. (See Defs. MTD at 6-18.) On July 1, 2011, Judge Schiller dismissed the § 14(a) claim, finding that plaintiff did not adequately plead loss causation. See Hoch v. Alexander, Civ. A. No. 11-217, 2011 WL 2633722, at *5 (D. Del. July 1, 2011). Judge Schiller denied the remainder of the motion to dismiss, ruling that "[a]lthough it is a close question as to

---

[1] Section 162(m) generally denies tax deductions for compensation in excess of $1 million that is awarded to the CEO and the four other highest paid employees. However, § 162(m) provides an exemption for "performance-based compensation" awarded to those individuals for compensation that meets the criteria set forth in the statute, including that shareholders approve the material terms of the plan under which such compensation is awarded. See Seinfeld v. O'Connor, 774 F. Supp. 2d 660, 662, 665-66 (D. Del. 2011); I.R.C. § 162(m)(4)(C)(ii).

whether Hoch has properly interpreted the proxy statement, this Court cannot conclude at this stage of the proceedings that his Complaint fails to state a claim". Id. at *6.

On November 29, 2011, Defendants advised plaintiff that Qualcomm had alerted the IRS to his lawsuit and his allegations concerning the nondeductibility under § 162(m) of any payments made to Qualcomm executives pursuant to the 2011 Amended LTIP.  (See 11/29/11 Letter (Ex. B).)  Defendants told plaintiff that the Company had requested the IRS review whether the 2011 shareholder vote complied with § 162(m) and to convey its position through an "Issue Resolution Agreement" or "IRA".  (Id.)  As Defendants advised plaintiff and the Court at the February 29, 2012, conference, the IRS has agreed to consider Qualcomm's request for an IRA.  (See 2/29/12 Tr. at 12 (Ex. C).)  Because the sole harm alleged in the Complaint is Qualcomm's purported inability (some time in the future) to deduct certain payments to its executives by reason of the purportedly noncompliant shareholder vote, Defendants believe an IRA would moot plaintiff's case.

On March 23, 2012, plaintiff filed the instant motion seeking leave to amend his Complaint.  Plaintiff requests leave to add two new claims under § 14(a)  (proposed Counts VI and VII) based on supposed technical deficiencies with the form voting card provided to shareholders in January 2011 (the "Voting Card"), and two new Delaware law claims (proposed Counts IV and V) based on the alleged coercion of Qualcomm's shareholders.  Defendants oppose both sets of proposed claims as futile.

## SUMMARY OF ARGUMENT

1.      Plaintiff's new § 14(a) claims based on alleged technical deficiencies with the Voting Card (proposed Counts VI and VII) are time-barred, and therefore it would be futile to add them to the Complaint.  The Voting Card claims accrued no later than March 8, 2011, more than one year before plaintiff filed the instant motion to amend.  (See infra Part II.A.)

2.     Proposed Counts VI and VII also are futile because they do not adequately plead a legally cognizable defect with the Voting Card, loss causation or negligence.  (See infra Parts II.B-D.)

3.     Plaintiff's additional Delaware law claims for coercion (proposed Counts IV and V) also are legally deficient and therefore futile.  Qualcomm shareholders were offered a choice between voting for the 2011 Amended LTIP or maintaining the status quo.  This does not come close to the standard for pleading coercion, which requires allegations that shareholders were wrongfully induced to make a decision for reasons unrelated to merit.  (See infra Part III.)

## STATEMENT OF FACTS

Qualcomm is a Delaware corporation.  (Compl. ¶ 10.)  All the Individual Defendants, with the exception of Irwin Jacobs, Paul Jacobs and Messrs. Keitel, Altman, Mollenkopf and Rosenberg, are independent members of Qualcomm's Board of Directors within the meaning of NASDAQ Rule 5605.  (See Proxy Statement at 7 (Ex. A).)[2]  Messrs. Keitel, Altman, Mollenkopf and Rosenberg (the "Non-Director Defendants") are not members of Qualcomm's Board.  (Compl. ¶ 8.)  Plaintiff is Kenneth Hoch, who claims to have been a Qualcomm shareholder since October 29, 2010, and "continuously since then".  (Id. ¶ 6.)

On March 7, 2006, Qualcomm's shareholders approved the 2006 Long-Term Incentive Plan ("2006 LTIP"), to remain in effect, if not earlier terminated, for a period of ten years (i.e., through March 2016).  (Proxy Statement at 14 (Ex. A); 1/12/06 DEF 14A at 19, App. 3, p. 1 (Ex. D).)  The 2006 LTIP subsequently was amended and reapproved in March 2008 and

---

[2] The Proposed Complaint's references to the Proxy Statement and the Voting Card make it appropriate for the Court to take judicial notice of those documents and other publicly filed documents relevant to the proposed amendments.  See Seinfeld v. Becherer, 461 F.3d 365, 367 n.1 (3d Cir. 2006); In re NAHC, Inc. Sec. Litig., 306 F.3d 1314, 1331 (3d Cir. 2002).

March 2010.  (See 4/23/08 10-Q at p. 51 (Ex. E); 3/8/10 8-K at p. 1 (Ex. F).)

On January 19, 2011, the Board filed the Proxy Statement, in which it sought shareholder approval of the 2011 Amended LTIP.  (Proxy Statement at 14 (Ex. A).)  The Proxy Statement informs shareholders that, under the 2011 Amended LTIP, "options or stock appreciation rights granted by the Compensation Committee qualify as performance-based compensation, and the other awards subject to performance goals may also qualify".  (Id. at 24; see also Compl. ¶¶ 21, 24.)  The Board also provided shareholders with the form Voting Card on January 19.  (Ex. G.)  On March 8, 2011, Qualcomm's shareholders overwhelmingly approved the 2011 Amended LTIP.  (See 3/14/11 8-K at 2 (Ex. H).)

Before the vote, neither plaintiff nor any other shareholder challenged the Proxy Statement's disclosures or otherwise questioned whether payments pursuant to the 2011 Amended LTIP would be deductible under § 162(m).  Nor did anyone object to the Voting Card. However, three days after the vote -- on March 11 -- plaintiff commenced this litigation.

The Complaint alleges that the Proxy Statement contained material misstatements about the tax-deductibility under § 162(m) of payments to be made pursuant to the 2011 Amended LTIP.  Plaintiff's theory is that Qualcomm violated Treasury Regulation § 1.162-27(e)(4)(i) because it disclosed that the 2006 LTIP would remain in effect in the event shareholders failed to approve the 2011 Amended LTIP.  Plaintiff contends that this alleged violation of the Treasury regulations renders the 2011 vote defective and makes it impossible for Qualcomm to pay compensation under the 2011 Amended LTIP that is tax deductible, thereby causing the Company's disclosure regarding the deductibility of such compensation to be misleading.  (See Compl. ¶¶ 23-25.)  The Complaint seeks equitable relief in the form of revised disclosures regarding the 2011 Amended LTIP and an order voiding the March 8, 2011,

shareholder vote; the Complaint "does not seek to recover damages". (See id. ¶ 5; id. at p. 16 ¶¶ A-F.)

On March 23, 2012, plaintiff filed the instant motion for leave to amend. Plaintiff seeks to add two Voting Card claims under § 14(a) (proposed Counts VI and VII). Both claims are substantively identical. However, plaintiff has pleaded proposed Count VI as a direct claim, and proposed Count VII as a derivative claim. Plaintiff also seeks to add two coercion claims under Delaware law (proposed Counts IV and V), again they are substantively identical but one is pleaded directly (proposed Count IV) and one is pleaded derivatively (proposed Count V). (See Proposed Compl. ¶¶ 60-78.)

With respect to the proposed Voting Card claims, plaintiff contends that Qualcomm's Voting Card violated SEC Rules 14a-4(a)(3) and 14a-4(b)(1) because it failed to: (i) "'identify clearly'" that if shareholders disapproved the 2011 Amended LTIP "they were merely reapproving" the 2006 LTIP as it existed before the vote (Proposed Compl. ¶¶ 69-70 (quoting 17 C.F.R. § 240.14a-4(a)(3))); (ii) "'afford an opportunity to specify . . . disapproval' of the performance goals of the 2006 LTIP" (id. ¶ 71 (quoting 17 C.F.R. § 240.14a-4(b)(1))); and (iii) "separately list the[] amendments" (id. ¶ 72). Plaintiff's proposed Delaware claims allege that shareholders were coerced into voting for the 2011 Amended LTIP because they were told the "unamended 2006 LTIP would remain in place" if they did not cast a favorable vote. (Id. ¶¶ 61, 66 (emphasis omitted).)

## ARGUMENT

## I. THE LEGAL STANDARD

As plaintiff concedes, leave to amend should be denied if his proposed claims would be futile. (Pl. Mot. at 3.) Claims are futile if they do not state a claim or otherwise would

not survive a motion to dismiss.  NAHC, 306 F.3d at 1332; Cureton v. Nat'l Collegiate Athletic

Ass'n, 252 F.3d 267, 273 (3d Cir. 2001).  That is the case here.

## II.      IT WOULD BE FUTILE TO ADD THE PROPOSED SECTION 14(A) CLAIMS (PROPOSED COUNTS VI AND VII).

Permitting plaintiff to add the proposed § 14(a) Voting Card claims would be

futile because the claims would not survive a motion to dismiss.  The proposed claims are time-

barred.  They also fail adequately to plead:  (i) any legally cognizable violation of § 14(a) or the

related SEC rules; (ii) loss causation; or (iii) negligence.

### A.      Proposed Counts VI and VII Are Time-Barred.

The statute of limitations for a § 14(a) claim is the lesser of one year from the

discovery of the facts constituting the alleged violation or three years from the alleged violation.

See, e.g., In re Exxon Mobil Corp. Sec. Litig., 500 F.3d 189, 194, 197, 199 (3d Cir. 2007).  The

one-year limitations prong is measured objectively; it commences when a plaintiff "discovered

or in the exercise of reasonable diligence should have discovered the basis for" a claim.  Del

Sontro v. Cendant Corp., 223 F. Supp. 2d 563, 570-71 (D.N.J. 2002) (citation and quotation

omitted); see also In re Exxon Mobil Corp. Sec. Litig., 387 F. Supp. 2d 407, 416-17 (D.N.J.

2005), aff'd, 500 F.3d 189 (3d Cir. 2007).

The proposed § 14(a) claims concern alleged technical deficiencies with the

Voting Card.  (See Proposed Compl. ¶¶ 70-72, 77.)  Because the alleged deficiencies appear on

the face of the Voting Card itself (that is, plaintiff does not claim subsequent disclosures revealed

the alleged defects), plaintiff was aware of or with reasonable diligence should have discovered

the purported basis for those claims on or around January 19, 2011, when the Voting Card was

distributed or, at the latest, by March 8, 2011, when the vote utilizing the Voting Card was

completed.  (See supra p. 5.)  Instead, plaintiff waited more than a year, until March 23, 2012,

before seeking to pursue claims alleging deficiencies with the Voting Card.  Those claims thus

are time-barred, and it would be futile to allow plaintiff to add them to the Complaint.  See

Cowell v. Palmer Twp., 263 F.3d 286, 296 (3d Cir. 2001) (futile to amend complaint to add

time-barred claim).

Plaintiff may argue that his § 14(a) Voting Card claims are saved by the relation-

back doctrine, but he would be wrong.  An amendment will only relate back to a timely pleading

if it "asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out --

or attempted to be set out -- in the original pleading".  Fed R. Civ. P. 15(c)(1)(B).  In other

words, there must be a "common core of operative facts" underlying both the proposed and

original claims.  Bensel v. Allied Pilots Ass'n, 387 F.3d 298, 310 (3d Cir. 2004); see also

Gillespie v. Janey, 441 Fed. Appx. 890, 895 (3d Cir. 2011).  The key inquiry is whether the

Complaint put Defendants on notice of the proposed claims regarding the Voting Card.  See

Bensel, 387 F.3d at 310 ("[T]he court looks to whether the opposing party has had fair notice of

the general fact situation and legal theory upon which the amending party proceeds.").

Here, Defendants did not have notice of the proposed § 14(a) Voting Card claims

because these claims do not arise from the same conduct, transaction, occurrence or legal theory

underlying the Complaint.  Rather, the proposed § 14(a) claims raise new arguments about a

document (the Voting Card) that is never even mentioned, let alone challenged, in the

Complaint.  Plaintiff now attacks the Voting Card, claiming that its format did not comply with

certain technical SEC requirements.  (See Proposed Compl. ¶¶ 69-72, 77.)  In contrast, the

Complaint is premised on alleged misstatements in the Proxy Statement regarding the § 162(m)

tax treatment of prospective payments under the 2011 Amended LTIP.[3]   Although the Voting

Card and Proxy Statement may have been distributed together, they are separate documents with

separate legal requirements.[4]   Accordingly, the Complaint has nothing to do with the Voting

Card or its compliance with the technical rules governing its format, and it certainly provides no

notice to Defendants that plaintiff believed the Voting Card was deficient.

       Moreover, the case law is clear that plaintiff cannot simply argue that relation

back is proper because the Voting Card and Proxy Statement both have some connection to the

2011 shareholder vote; rather, "a more detailed analysis" is required.  Walsh Sec. Inc. v. Cristo

Prop., Civ. Action No. 97-3496, 2008 WL 4792544, at *9 (D.N.J. Oct. 31, 2008).  For example,

in Henderson v. Diguglielmo, the Third Circuit held that an amended habeas petition alleging

jury tampering and juror misconduct did not relate back to an ineffective assistance of counsel

claim, despite the shared connection to the petitioner's trial.  138 Fed. Appx. 463, 467 (3d Cir.

2005).  Likewise, in Petroleos Mexicanos Refinacion v. M/T King A, the Third Circuit reversed

---

[3] Count I was premised on "materially false statements . . . disseminated to the stockholders in the Proxy Statement" (Compl. ¶ 42), Count II is premised on "the false or misleading Proxy Statement" (id. ¶ 48; see also id. ¶ 49) and Count III is premised on the Director Defendants' "acts . . . in including their names in the 2011 Proxy Statement" (id. ¶ 53).  Plaintiff's description of the nature of his action in the parties' Joint Status Report also is telling.  The Report (like the Complaint) makes no mention of the Voting Card or any of its supposed technical deficiencies.  Instead, it states that plaintiff commenced litigation against the Defendants alleging that "the January 20, 2011, proxy statement . . . was false or misleading because it incorrectly stated that certain prospective payments under Qualcomm's long-term incentive plan . . . would qualify as 'performance-based compensation' for purposes of tax deductibility under § 162(m)".  (Joint Status Report at 1.)

[4] See, e.g., 17 C.F.R. § 240.14a-3(e)(1)(i)(D) (delivery of proxy statement effective if, among other things, "registrant delivers, together with or subsequent to delivery of the proxy statement, a separate proxy card for each security holder") (emphasis added); id. § 240.14a-1(f) (defining "proxy" (i.e. the voting card)); id. § 240.14a-1(g) (defining "proxy statement"); id. § 240.14a-4 (specifying technical requirements for voting cards); id. § 240.14a-101 (specifying requirements for proxy statements).

the District Court's ruling that an <u>in rem</u> admiralty action related back to an <u>in personam</u> action, despite recognizing that the two cases were "closely linked" and had a "close interrelation". 554 F.3d 99, 107, 109 (3d Cir. 2009). And, in <u>Walsh</u>, the court held that certain proposed amendments did not relate back, even if they "arise out of entry into . . . or revolve around the consummation of" the contract underlying the original claims, because the new claims asserted "new grounds of relief supported by facts that differ in both time and type from those the original pleading set forth." 2008 WL 4792544, at *9-10.

**B.  The Proposed § 14(a) Claims Fail to State a Claim.**

Even assuming plaintiff's proposed §14(a) Voting Card claims are timely (which they are not), those claims still are futile because they fail to identify any legally cognizable deficiency.

<u>First</u>, plaintiff is mistaken that Rule 14a-4(a)(3) required the Card to "identify clearly" that if shareholders disapproved the 2011 Amended LTIP they allegedly "were merely reapproving" the 2006 LTIP as it existed before the vote (Proposed Compl. ¶¶ 69-70 (quotation omitted)). As plaintiff himself acknowledges, the Rule requires only that voting cards "'identify clearly . . . each separate matter intended to be acted upon, whether or not related to or conditioned on the approval of other matters'". (<u>Id.</u> ¶ 69 (quoting 17 C.F.R. § 240.14a-4(a)(3) (alteration in original)).) Thus, by its plain terms, the Rule in no way mandates the kind of substantive disclosure plaintiff alleges was required in the Voting Card.

<u>Second</u>, Rule 14a-4(b)(1) did not require the Voting Card to "afford an opportunity to specify . . . disapproval of the performance goals of the 2006 LTIP". (<u>Id.</u> ¶ 71 (quotation omitted).) Shareholders approved the 2006 LTIP, including its performance goals, in 2006 for a term through 2016. (<u>See</u> <u>supra</u> p. 5.) In January 2011, shareholders were asked to reapprove the 2006 LTIP, including its performance goals and other material terms as well as

10

certain proposed amendments, which they did by an overwhelming majority.  (See id.)  Neither

the Treasury regulations nor SEC Rule 14a-4(b) (discussed immediately below) require anything

more.[5]

       <u>Third</u>, the Voting Card did not have to "separately list the[] amendments".

(Proposed Compl. ¶ 72.)  Pursuant to Rule 14a-4(b), the Card had to afford shareholders the

opportunity to choose "between approval or disapproval of, or abstention with respect to each

separate matter".  17 C.F.R. § 240.14a-4(b)(1).  In other words, separate votes only are required

for "separate matters".  <u>Rosenberg v. Nabors Indus., Inc.</u>, CIV.A. H021942, 2002 WL 1431820,

at *11 (S.D. Tex. June 14, 2002).  Here, shareholders were being asked to vote on a single

matter:  whether to approve "the 2006 Long-Term Incentive Plan, as amended, which includes an

increase in the share reserve by 65,000,000 shares".  (Voting Card, Item 2 (Ex. G).)  There is

simply no factual or legal basis for plaintiff's claim that posing this single question without

breaking out and seeking reapproval of the 2011 Amended LTIP on a provision-by-provision

basis violates the SEC Rules.  See <u>Rosenberg</u>, 2002 WL 1431820, at *12 (proxy card properly

bundled vote to approve agreement and merger plan with vote to approve certain by-law and

certificate of incorporation changes necessary to effect merger because all related to "the only

transaction to be voted upon", <u>i.e.</u>, the merger).  Indeed, it is difficult even to envision how

shareholders or companies could meaningfully navigate such piecemeal votes.

     **C.**    **Plaintiff Does Not Adequately Plead Loss Causation.**

       Pursuant to the Private Securities Litigation Reform Act ("PSLRA"), to state a §

14(a) claim, plaintiff must plead loss causation:  "that the act or omission of the defendant . . .

---

[5] Note that because of the 2008 and 2010 shareholder votes (see supra p. 5), Qualcomm did not
need shareholder reapproval of the full Plan in 2011 (see Defs. Reply MTD at 6-7), but it sought
such reapproval anyway.

caused the loss for which the plaintiff seeks to recover damages". 15 U.S.C. § 78u-4(b)(4); see also Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc., 552 U.S. 148, 165 (2008) (PSLRA "imposed . . . a loss causation requirement upon 'any private action' arising from the Securities Exchange Act"). In dismissing plaintiff's original § 14(a) claim, the Court held that "Hoch['s] alleg[ations] that 'Defendants have injured the plaintiff directly by providing materially false information' and that as a result, he 'has been and will be injured'" were insufficient "to meet the loss causation requirement". Hoch, 2011 WL 2633722, at *5 (quoting Compl. ¶¶ 43-44); see also Pl. Mot. at 2 ("Court concluded that the Complaint lacked a 'link between the alleged misstatements in the [Proxy] and actual economic harm'." (quoting Hoch, 2011 WL 2633722, at *5)).[6]

Count VI, plaintiff's proposed direct § 14(a) claim, suffers from precisely the same flaw. It alleges only that the Card was defective and that "[a]s a result . . . the Plaintiff has been and will be injured", and it seeks only injunctive relief in the form of corrective disclosures and a new vote. (Proposed Compl. ¶ 73.) As such, it fails for the same reason the Court dismissed Count I. See 2011 WL 2633722, at *5; Resnik, 774 F. Supp. 2d at 632. Moreover, if Count VI is dismissed, Count VII should also be dismissed, because the only injury plaintiff pleads with respect to Count VII is the supposed damages Qualcomm would incur due to Count

---

[6] Judge Schiller relied (see 2011 WL 2633722, at *5) on Resnik v. Woertz, in which Chief Judge Sleet held that virtually identical allegations were legally insufficient. Chief Judge Sleet explained that "[i]n well-pleaded § 14(a) claims, loss causation connects the proxy misstatements with an actual economic harm" and a direct claim that only "alleges a deprivation of [the] right to a fully informed stockholder vote caused by the misrepresentations" in a proxy statement and that "seeks only injunctive relief in the form of corrective disclosures and another vote" does not adequately plead loss causation. 774 F. Supp. 2d 614, 632 (D. Del. 2011) (emphasis added).

VI.  (See Proposed Compl. ¶ 78.)[7]

     **D.    Plaintiff Does Not Adequately Plead Negligence.**

     Negligence also is an essential element of a § 14(a) claim.  See Gould v. American-Hawaiian S.S. Co., 535 F.2d 761, 777-78 (3d Cir. 1976); In re Reliance Sec. Litig., 135 F. Supp. 2d 480, 511 (D. Del. 2001).  Plaintiff's only negligence allegation is the conclusory assertion that "[d]efendants were negligent in soliciting proxies . . . with material misrepresentations and omissions concerning . . . the amendments to the 2006 LTIP".  (Proposed Compl. ¶ 37.)  That allegation is insufficient for several reasons.

     First, it plainly only relates to the dismissed Count I, which pleaded alleged misstatements in the Proxy Statement.  It has no application to the proposed new § 14(a) claims, which do not concern alleged misstatements, but rather allege deficiencies with the Voting Card.

     Second, the bare averment of negligence does not satisfy Federal Rule of Civil Procedure 8 because it pleads no facts supporting a plausible belief that the Individual Defendants were negligent.  See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."); Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997) (court need not credit "bald assertions" or "legal conclusions" when deciding motion to dismiss).  For example, plaintiff does not allege any specific steps that Defendants took or failed to take with respect to the Voting Card and thus

---

[7] In Resnik, the court did not dismiss the derivative § 14(a) claim when it dismissed the direct § 14(a) claim.  However, in that case, unlike here, the derivative claim was premised on something other than the direct § 14(a) claim.  See 774 F. Supp. 2d at 632.

provides the Court with no basis to "draw the reasonable inference that the defendant is liable for the misconduct alleged". Iqbal, 556 U.S. at 678.[8]

Third, plaintiff is wrong that he does not have to plead negligence because he only seeks declaratory and injunctive relief. (See Proposed Compl. ¶ 37.) Courts in this Circuit have applied the negligence element to claims for equitable or injunctive relief. See, e.g., Bolger v. First State Fin. Servs., 759 F. Supp. 182, 191, 193 (D.N.J. 1991); Bertoglio v. Tex. Int'l Co., 488 F. Supp. 630, 651-52, 662 (D. Del. 1980). Ash v. LFE Corp., which plaintiff previously cited in opposition to Defendants' motion to dismiss, is not to the contrary; it concerns only whether a § 14(a) claim requires scienter. See 525 F.2d 215, 220 (3d Cir. 1975).[9]

## III.   IT WOULD BE FUTILE TO ADD THE PROPOSED DELAWARE LAW CLAIMS (COUNTS IV AND V).

Proposed Counts IV and V allege that shareholders were coerced into voting for the 2011 Amended LTIP because they were told the "unamended 2006 LTIP would remain in place" if they did not reapprove the amended plan. (Proposed Compl.   ¶ 61 (Count IV) & ¶ 66 (Count V).)  To the extent these new claims differ from Counts II and III, permitting plaintiff to add them to the Complaint would be futile because neither states a cognizable claim for relief.

Under Delaware law, it is neither "wrongful[]" nor "actionabl[e]" coercion to "intentionally persuad[e] someone to prefer one option over another". Gradient OC Master, LTD. v. NBC Universal, Inc., 930 A.2d 104, 117 (Del. Ch. 2007).  Rather, a shareholder is coerced only if he "is wrongfully induced to make a decision for reasons unrelated to merit". Id.;

---

[8] This failure is particularly acute with respect to the Non-Director Defendants because  the Complaint does not even allege they played a role in the proxy solicitation process generally (see Defs. MTD at 17), let alone with respect to the Voting Card specifically.

[9] Judge Schiller did not address whether the Complaint adequately pleaded negligence.

see also In re Gen. Motors Class H S'holders Litig., 734 A.2d 611, 620 (Del. Ch. 1999)

("Impermissible coercion exists where the board . . . takes actions which have the effect of

causing the shareholders to vote in favor of the proposed transaction for some reason other than

the merits of the transaction." (quotation omitted)). As a matter of law, there is no coercion

where shareholders are given a choice between voting for a proposal or maintaining the status

quo.  Gen. Motors, 734 A.2d at 620.

 The court in General Motors rejected precisely the type of coercion claim that

plaintiff attempts to assert here.  In General Motors, plaintiffs alleged they were coerced into

voting for certain transactions because, among other things, they were told the proposed

transactions "were entitled to tax-free treatment under recently enacted federal tax legislation"

but that, if they rejected the transactions, any future similar deals would incur taxable gain for the

company.  Id.  The court held that shareholders were not coerced because they "would have been

in precisely the same position they were in before the vote" if they voted no, and the company

merely informed shareholders of the potential tax consequences of a negative vote, which "was

material [information] and informed the . . . stockholders of a reality with which [the company]

and they had to contend".  Id.; see also id. at 621 (noting, in distinguishing cases finding

coercion, that in those cases "the electorate was told that retribution would follow if the proposed

transaction was defeated.  Put differently, the electorate was not given an option to remain in

their current position.  They were put to a choice between a new position and a compromised

position.").

 In this case, Qualcomm's shareholders similarly were asked to choose between

approving the 2011 Amended LTIP or maintaining the status quo (i.e., the 2006 LTIP, as

amended pursuant to shareholder votes in 2008 and 2010).  Plaintiff alleges that Defendants

"[u]s[ed] the non-tax-deductibility of the old 2006 LTIP as a threat" and that "shareholders were presented with a non-choice between identical performance goals, but were told one decision would be more expensive to the Company than the other".  (Proposed Compl. ¶ 61.)  Defendants never said, however, that payments under the 2006 LTIP would not be deductible if the 2011 Amended LTIP were rejected.  The provision plaintiff cites (Proposed Compl. ¶ 27) states only that shareholder approval was needed for payments made under the 2011 Amended LTIP to be deductible; it says nothing about deductibility under the prior version of the Plan.  (See Proxy Statement at 24 (Ex. A).)  Moreover, the Proxy Statement's disclosure that "[s]hould stockholder approval not be obtained, then the proposed amendments will not be implemented, and the 2006 LTIP will continue in effect pursuant to its current terms" (id. at 25) is a factually true statement. It is exactly what would have occurred in the event of a failed vote.  The prior plan would have remained in effect, and the proposed amendments, including a request to increase the share reserve by 65 million shares (see id. at 14), would not have been implemented.  Indeed, plaintiff does not challenge -- and has never challenged -- the accuracy of this statement; he simply characterizes it as a "threat" without any legal or factual basis for doing so.

The "coercion" cases relied upon by plaintiff -- Levitt Corp. v. Office Depot, Inc., C.A. No. 3622-VCN, 2008 Del. Ch. LEXIS 47 (Del. Ch. Apr. 14, 2008), and Williams v. Geier, C.A. No. 8456, 1987 Del. Ch. LEXIS 436 (Del. Ch. May 20, 1987) -- are inapposite.  Levitt did not even involve a coercion claim; it concerned a shareholder's ability to nominate directors. See 2008 Del. Ch. LEXIS 47, at *10, *24-25.  In Williams, the court expressed "serious question[s]" whether the coercion claim was legally sufficient and only sustained it because "[t]he parties did not address the merits of this claim in their briefs".  1987 Del. Ch. LEXIS, at *19.  Indeed, the Williams plaintiff later voluntarily dismissed the coercion claim and the

16

Delaware Supreme Court ultimately held that there had been no coercion.  <u>Williams v. Geier</u>,

671 A.2d 1368, 1375, 1382-84 (Del. 1996).

## CONCLUSION

For each of the foregoing reasons, Defendants respectfully request that the Court

deny plaintiff's motion for leave to amend the Complaint.

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

Evan R. Chesler                                     By:  */s/ Richard L. Horwitz*
Rachel G. Skaistis                                       Richard L. Horwitz (#2246)
CRAVATH, SWAINE & MOORE LLP                              Peter J. Walsh, Jr. (#2437)
Worldwide Plaza                                          Matthew D. Stachel (#5419)
825 Eighth Avenue                                        Hercules Plaza, 6th Floor
New York, New York 10019                                 1313 N. Market Street
Tel:  (212) 474-1000                                     Wilmington, DE19801
EChesler@cravath.com                                     Tel:  (302) 984-6000
RSkaistis@cravath.com                                    rhorwitz@potteranderson.com
                                                         pwalsh@potteranderson.com
Dated:  April 20, 2012                                   mstachel@potteranderson.com
1056300 / 36664
                                                         *Attorneys for Defendants*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

**<u>CERTIFICATE OF SERVICE</u>**

I, Matthew D. Stachel, hereby certify that on April 20, 2012, the attached document was electronically filed with the Clerk of the Court using CM/ECF which will send notification to the registered attorney(s) of record that the document has been filed and is available for viewing and downloading.

I further certify that on April 20, 2012, the attached document was Electronically Mailed to the following person(s):

| | |
|---|---|
| Joseph J. Farnan, Jr. | Alexander Arnold Gershon |
| Joseph J. Farnan, III | William J. Ban |
| Brian E. Farnan | Michael A. Toomey |
| FARNAN LLP | BARRACK RODOS & BACINE |
| 919 N. Market Street | 1350 Broadway, Suite 1001 |
| 12th Floor | New York, NY  10018 |
| Wilmington, DE 19801 | agershon@barrack.com |
| farnan@farnanlaw.com | wban@barrack.com |
| jjfarnan@farnanlaw.com | mtoomey@barrack.com |
| bfarnan@farnanlaw.com | |
| | |
| Daniel E. Bacine | |
| Julie B. Palley | |
| BARRACK, RODOS & BACINE | |
| Two Commerce Square | |
| 2001 Market Street, Suite 3300 | |
| Philadelphia, PA  19103 | |
| dbacine@barrack.com | |
| jpalley@barrack.com | |

By:    */s/ Matthew D. Stachel*
      Richard L. Horwitz
      Peter J. Walsh
      Matthew D. Stachel
      POTTER ANDERSON & CORROON
      LLP
      Tel:  (302) 984-6000
      rhorwitz@potteranderson.com
      pwalsh@potteranderson.com
      mstachel@potteranderson.com