## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

KENNETH HOCH,                                )
                                             )
                           Plaintiff,        )
                                             )
v.                                           )        C.A. No. 11-217-RGA
                                             )
BARBARA T. ALEXANDER, et al.,                )        **JURY TRIAL DEMANDED**
                                             )
                           Defendants,       )        **PUBLIC VERSION**
                                             )
          -and-                              )
                                             )
QUALCOMM INCORPORATED,                       )
                                             )
                  Nominal Defendant.         )

**OPENING BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS
THE AMENDED COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL
PROCEDURE 23.1 FOR LACK OF ADEQUATE DERIVATIVE PLAINTIFF**

OF COUNSEL:

Evan R. Chesler
Rachel G. Skaistis
Leslie W. Regenbaum
CRAVATH, SWAINE & MOORE LLP
Worldwide Plaza
825 Eighth Avenue
New York, New York 10019
Tel:  (212) 474-1000
EChesler@cravath.com
RSkaistis@cravath.com
LRegenbaum@cravath.com

Richard L. Horwitz (#2246)
Peter J. Walsh, Jr. (#2437)
Matthew D. Stachel (#5419)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE19801
Tel:  (302) 984-6000
rhorwitz@potteranderson.com
pwalsh@potteranderson.com
mstachel@potteranderson.com

*Attorneys for Defendants*

Dated:    April 23, 2013
Public Version Dated: April 30, 2013
1104286 / 36664

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ...................................................................................... ii

EXPLANATION OF CITATION FORMS ............................................................... iii

PRELIMINARY STATEMENT ................................................................................1

NATURE AND STAGE OF PROCEEDINGS ........................................................2

SUMMARY OF ARGUMENT .................................................................................4

STATEMENT OF FACTS ........................................................................................5

ARGUMENT .............................................................................................................7

    I.     MR. HOCH HAS NOT AND WILL NOT PERFORM HIS RULE 23.1(a) DUTY. ..............................................................................................8

    II.    MR. KAUFMAN WILL NOT PERFORM HIS RULE 23.1(a) DUTY. ............10

CONCLUSION ........................................................................................................14

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

Aronson v. Lewis,
    473 A.2d 805 (Del. 1984) ..............................................................................7

Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.,
    222 F.3d 52 (2d Cir. 2000).............................................................................8

Blasband v. Rales,
    971 F.2d 1034 (3d Cir. 1992).........................................................................7

Gen. Tel. Co. of the Southwest Co. v. Falcon,
    457 U.S. 147 (1982).......................................................................................7

Hassine v. Jeffes,
    846 F.2d 169 (3d Cir. 1988)...........................................................................7

Hoch v. Alexander,
    C.A. No. 11-217-RGA, 2011 WL 2633722 (D. Del. July 1, 2011)...........................2

In re JPMorgan Chase & Co. S'holder Deriv. Litig.,
    Master No. 08-974, 2008 WL 4298588 (S.D.N.Y. Sept. 19, 2008) ............................... *passim*

South v. Baker,
    62 A.3d 1 (Del. Ch. 2012)............................................................................13

Vanderbilt v. Geo-Energy Ltd.,
    725 F.2d 204 (3d Cir. 1983)..................................................................8, 14

**Statutes & Rules**

8 Del. C. § 141(a)...............................................................................................7

Fed. R. Civ. P. 23 ......................................................................................... *passim*

I.R.C. § 162(m) ...............................................................................................2, 3

**Other Authorities**

7C Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and
    Procedure § 1833 (2007)...............................................................................7

## EXPLANATION OF CITATION FORMS

The following citation forms are used in this brief:

- "Skaistis Declaration" or "Skaistis Decl." for references to the Declaration of Rachel G. Skaistis in Support of Defendants' Motion To Dismiss the Amended Complaint Pursuant to Federal Rule of Civil Procedure 23.1 for Lack of Adequate Derivative Plaintiff, dated April 23, 2013.

- "Ex." for references to documents attached as exhibits to the Skaistis Declaration.

- "Complaint" or "Compl." for references to plaintiff's Verified Complaint, filed on March 11, 2011 (D.I. 1).

- "Amended Complaint" or "Am. Compl." for references to plaintiff's Verified Amended and Supplemented Complaint, filed on August 13, 2012 (D.I. 122).

- "11/29/11 Letter" for references to the November 29, 2011 letter from Rachel G. Skaistis to A. Arnold Gershon and William J. Ban (Ex. 1).

- "2/29/12 Tr." for references to the transcript of the February 29, 2012 status conference (Ex. 2).

- "IRA" for references to the executed copy of Form 886-A Issue Resolution Agreement between Qualcomm Incorporated ("Qualcomm") and the Internal Revenue Service, dated June 11, 2012 (Ex. 3).

- "11/15/12 Email" for references to the November 15, 2012 email from A. Arnold Gershon to Rachel G. Skaistis, et al. (Ex. 4).

- "3/13/13 Email" for references to the March 13, 2013 email from A. Arnold Gershon to Rachel G. Skaistis, et al. (Ex. 5).

- "4/10/13 Hoch Interrogs. Resp." for references to Plaintiff Kenneth Hoch's Objections and Responses to the Individual Defendants' Third Set of Interrogatories Directed to Plaintiff, dated April 10, 2013 (Ex. 6).

- "Kaufman Tr." for references to the transcript of the deposition of Jeffrey I. Kaufman, dated April 17, 2013 (Ex. 7).

- "1/30/13 10-Q" for references to the Qualcomm Form 10-Q, filed with the Securities & Exchange Commission on January 30, 2013 (Ex. 8).

- "Kaufman Priv. Log" for references to the Privilege Log for Jeffrey I. Kaufman (Ex. 9).

- "4/26/12 Letter" for references to the April 26, 2012 letter from Brian E. Farnan to Rachel G. Skaistis (Ex. 10).

- "4/27/12 Letter" for references to the April 27, 2012 letter from Rachel G. Skaistis to Brian E. Farnan (Ex. 11).

In addition to the grounds for dismissal set forth in their pending motion pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendants respectfully move to dismiss this action pursuant to Federal Rule of Civil Procedure 23.1(a) on the alternative and independent ground that the current plaintiff (Kenneth Hoch) and the putative new plaintiff (Jeffrey Kaufman) do not fairly and adequately represent the interests of the shareholders of Qualcomm Incorporated ("Qualcomm" or the "Company").

## PRELIMINARY STATEMENT

Based on recent developments, it is now apparent that this derivative action does not meet the most fundamental requirement of Rule 23.1: the involvement of a plaintiff who will fairly and adequately represent the interests of Qualcomm shareholders. In fact, there is currently no plaintiff overseeing the litigation, which is being run entirely by counsel, something that likely has been the case for many months.

Although Mr. Hoch -- the shareholder who initiated this action -- has not yet formally withdrawn as plaintiff, his counsel advised Defendants last month that for medical reasons he cannot sit for a deposition and no longer wishes to serve as plaintiff. Defendants now understand that during the two years his case has been pending, Mr. Hoch (presumably because of his medical condition) has played only a modest role, at best, in overseeing and protecting the interests of Qualcomm's shareholders. Not only has Mr. Hoch's contact with counsel been limited and sporadic, but counsel has attempted to take various actions on Mr. Hoch's behalf that, had they been pursued successfully, likely would have harmed, rather than benefitted, Qualcomm shareholders.

Plaintiff's counsel intends to seek to substitute a new plaintiff, Mr. Kaufman, for Mr. Hoch. However, Mr. Kaufman is in no better position to fairly and adequately represent Qualcomm's shareholders. Defendants submit that Mr. Kaufman -- who recently testified that he

is a "totally passive" investor and has never read any of Qualcomm's SEC filings, including the

ones at issue here -- was recruited as a potential replacement for Mr. Hoch, not because he

wishes diligently to oversee this matter, but because he was asked to serve as a plaintiff by his

former fraternity brothers.  For the reasons set forth below, that is not sufficient to meet the

requirements of Rule 23.1, particularly in the instant litigation, which has dragged on for more

than two years without a consistent or coherent theory of liability and harm.

### NATURE AND STAGE OF PROCEEDINGS

On January 19, 2011, Qualcomm filed a Proxy Statement (the "Proxy Statement")

seeking shareholder approval of its 2006 Long-Term Incentive Plan (the "LTIP") as amended

(the "2011 Amended LTIP").  The Proxy Statement informed shareholders that certain

prospective payments to senior management pursuant to the 2011 Amended LTIP would qualify

as "performance-based compensation" for purposes of tax deductibility under § 162(m) of the

Internal Revenue Code.  (See Compl. ¶ 24.)  On March 8, 2011, Qualcomm's shareholders

overwhelmingly approved the 2011 Amended LTIP.

On March 11, 2011, Mr. Hoch filed the initial Complaint, alleging that certain

statements contained within the Proxy Statement violated relevant Treasury regulations and

precluded Qualcomm from taking tax deductions under § 162(m) for compensation paid pursuant

to the 2011 Amended LTIP.  The Complaint alleged that the Proxy Statement was therefore false

and misleading because its statements regarding the deductibility of payments under the 2011

Amended LTIP were wrong.  (Id. ¶¶ 25, 41-55.)  The Complaint asserted a proxy statement

violation claim under § 14(a) of the Securities Exchange Act of 1934 and two Delaware law

claims for breach of fiduciary duty and corporate waste.  (Id. ¶¶ 41-55.)  On July 1, 2011, Judge

Schiller dismissed the § 14(a) claim, while denying the remainder of the motion to dismiss.

Hoch v. Alexander, C.A. No. 11-217-RGA, 2011 WL 2633722, at *5-6 (D. Del. July 1, 2011).

On November 29, 2011, Defendants advised Mr. Hoch that Qualcomm had

notified the Internal Revenue Service ("IRS") of his lawsuit and asked the agency to opine on the

tax issues raised. (11/29/11 Letter (Ex. 1).) On February 29, 2012, Defendants further advised

plaintiff and the Court that the IRS had agreed to review whether the Proxy Statement complied

with § 162(m) and potentially to convey its position through an Issue Resolution Agreement

("IRA"). (2/29/12 Tr. at 12 (Ex. 2).) On June 11, 2012, Qualcomm and the IRS entered into an

IRA, pursuant to which the IRS concurred with Qualcomm's position that the Proxy Statement is

fully compliant with § 162(m). (IRA at 3 (Ex. 3).)

Defendants hoped that the IRS's statement that it agreed with Qualcomm's tax

position would end what had become a costly and burdensome proceeding. However, on August

13, 2012, plaintiff filed an Amended Complaint, which includes his original state law claims plus

ten new claims focused primarily on the argument that the process by which Defendants

submitted the 2011 Amended LTIP (and a 2010 amendment to the LTIP) to shareholders for

approval did not comply with Delaware law. (E.g., Am. Compl. ¶¶ 106-07.) These new

"process" claims do not concern the content of the Proxy Statement, which was the basis of the

initial Complaint and, therefore, the issue submitted to the IRS for its consideration. Put another

way, the newly added process claims are (presumably intentionally) beyond the scope of the

IRA, a document that definitively put to rest Mr. Hoch's purported initial concerns that payments

under the 2011 Amended LTIP would not be deductible.

Defendants moved to dismiss the Amended Complaint under Federal Rule of

Civil Procedure 12(b)(6) for failure to state a claim on September 14, 2012. The Court heard

oral argument on January 23, 2013.

3

On November 8, 2012, Defendants noticed Mr. Hoch's deposition. (D.I. 149.) On November 14, 2012, plaintiff's counsel advised that Mr. Hoch would be unavailable for a deposition until March 2013 because he was scheduled for back surgery in December. (See 11/15/12 Email (Ex. 4) (summarizing parties' November 14 meet-and-confer).) Based on counsel's representation, Defendants stipulated to an extension of the time for Mr. Hoch's deposition until March 15, 2013, which the Court approved on November 26, 2012. (D.I. 151; D.I. 153.)[1]

On March 13, 2013, following an inquiry from Defendants' counsel, plaintiff's counsel advised Defendants (for the first time) that "[o]wing to continuing health issues plaintiff Hoch is unavailable for a deposition, and we will substitute new plaintiff Kaufman who is prepared to give his deposition". (3/13/13 Email (Ex. 5).) In response, Defendants sought discovery from Messrs. Hoch and Kaufman and from plaintiff's counsel regarding Mr. Hoch's performance of his Federal Rule 23.1(a) duty to fairly and adequately represent the interests of Qualcomm's shareholders and whether Mr. Kaufman would perform that duty going forward. (D.I. 170-73.) Defendants received limited written discovery responses on April 5 and April 10, and deposed Mr. Kaufman on April 17. (E.g., Ex. 6.) Based on this discovery, Defendants now move to dismiss the Amended Complaint pursuant to Rule 23.1(a).

## SUMMARY OF ARGUMENT

1.    Because Mr. Hoch no longer wishes to serve as plaintiff and because his actions to date establish that he has not fairly and adequately represented the interests of Qualcomm's other shareholders, the Court should dismiss Mr. Hoch's action with prejudice pursuant to Rule 23.1(a).

---

[1] The Court's original deadline for completing fact discovery was November 29, 2012. (D.I. 69.)

4

2.     The Court should deny Mr. Kaufman leave to replace Mr. Hoch as

plaintiff because Mr. Kaufman will not fairly and adequately represent Qualcomm's

shareholders, as required by Rule 23.1(a).

## STATEMENT OF FACTS

Mr. Hoch appears to suffer from serious medical ailments, some of which predate

the commencement of this litigation. (4/10/13 Hoch Interrogs. Resp. No. 1 (Ex. 6).)  Through

counsel, Mr. Hoch contends that these ailments preclude him from being deposed and have made

him unwilling to continue as plaintiff in this action.  (Id.; see also 3/13/13 Email (Ex. 5).)

Whether for health or other reasons, Mr. Hoch and his counsel engaged in limited

communications over the course of this case.  According to Mr. Hoch, he had no written or oral

communications with his counsel in April, May, June, August, September, October, November

or December of 2011, in January, February, April, May, September, October or December of

2012 or in January or February of 2013.  (4/10/13 Hoch Interrogs. Resp. No. 3 (Ex. 6).)  During

these months when there was no communication with Mr. Hoch, plaintiff's counsel actively was

pursuing various aspects of the litigation, including in late 2011 and early 2012, when

Qualcomm notified plaintiff's counsel that it was bringing the tax issues directly to the IRS and

asked plaintiff's counsel to stay the litigation pending the IRS's review in the best interests of the

Company's shareholders.  (See 11/29/11 Letter (Ex. 1); see also D.I. 67.)[2]

Mr. Kaufman is an optometrist.  (Kaufman Tr. at 12:8-11; 13:20-14:13 (Ex. 7).)

He has no education or training in finance, accounting, executive compensation, tax or general

business.  (Id. at 12:17-13:19.)  Mr. Kaufman is a "totally passive" investor who has "very little

---

[2] Of course, because Mr. Hoch could not be deposed, Defendants have no information as to the
substance or extent of Mr. Hoch's communications with counsel even in the months when such
communications occurred.

to do with the input" in his investing. (Id. at 23:13-23.)  Rather, he leaves "financial decisions" to his financial advisor, Louis Levine. (Id.)  Mr. Kaufman "[v]ery rarely" reads news about stocks and does not read SEC filings. (Id. at 26:14-18.)  In particular, he does not read news about Qualcomm, or Qualcomm's SEC filings, including the proxy statements filed in 2010 through 2013, several of which are the subject of this litigation. (Id. at 33:25-34:24.)  Mr. Kaufman owns just 45 Qualcomm shares. (Id. at 28:5-9.)  As of its most recent Form 10-Q, Qualcomm has more than 1.7 billion shares outstanding. (1/30/13 10-Q at 1 (Ex. 8).)  During the period he has owned Qualcomm stock, the value of Mr. Kaufman's investment has increased 60%. (Kaufman Tr. at 33:12-24 (Ex. 7).)

Mr. Kaufman knew nothing about this case until he was approached in November 2012 by Mr. Levine and/or Daniel Bacine, a named partner in the law firm of Barrack, Rodos & Bacine, and one of plaintiff's lawyers. (Id. at 36:20-37:17; 40:9-20.)  Although he could not recall with whom he first discussed the matter, Mr. Kaufman believes Messrs. Levine and Bacine "spoke about the case" and that he discussed with Mr. Levine the "issues" of the case. (Id. at 37:18-38:12.)  Messrs. Kaufman, Bacine and Levine have known each other for many years, having been fraternity brothers at Temple University, which Mr. Kaufman attended from 1962 through 1964. (Id. at 11:20-12:7; 25:25-26:5; 38:25-39:8.)  Mr. Bacine also serves as Mr. Kaufman's attorney in another shareholder derivative action recently filed in this District involving the Dow Chemical Company. (Id. at 17:8-18:13.)  Mr. Kaufman did not have any concerns with the Proxy Statement, LTIP or Board process issues until his November 2012 discussion with Mr. Bacine. (Id. at 49:24-50:5.)

In November 2012, Mr. Bacine asked Mr. Kaufman to serve as plaintiff in this matter in the event Mr. Hoch was medically unable to continue as plaintiff. (Id. at 42:3-43:3.)

Mr. Kaufman agreed to do so.  (<u>Id.</u>)  Mr. Kaufman did not have any further communication

about this case until March 2013 (<u>id.</u> at 45:2-46:21), and he first received the Complaint and

redacted Amended Complaint in late March and the unredacted Amended Complaint in early

April (<u>id.</u> at 48:5-24; Kaufman Priv. Log (Ex. 9)).  Plaintiff's counsel have withheld the specifics

of all written communications on the ground that they purportedly are privileged.

## ARGUMENT

It is a "cardinal precept" of Delaware law "that directors, rather than shareholders,

manage the business and affairs of the corporation", including whether to pursue litigation.

<u>Aronson v. Lewis</u>, 473 A.2d 805, 811 (Del. 1984); <u>see also</u> <u>Blasband v. Rales</u>, 971 F.2d 1034,

1048 (3d Cir. 1992); 8 <u>Del. C.</u> § 141(a).  Accordingly, under Federal Rule 23.1, when a

shareholder steps into the shoes of corporate fiduciaries to control litigation on purported behalf

of the corporation, he must "fairly and adequately represent the interests of shareholders . . . who

are similarly situated in enforcing the right of the corporation".  Fed. R. Civ. P. 23.1(a); <u>see also</u>

<u>In re JPMorgan Chase & Co. S'holder Deriv. Litig.</u>, Master No. 08-974, 2008 WL 4298588, at

*7 (S.D.N.Y. Sept. 19, 2008).

The Third Circuit has explained that "[t]he inquiry that a court should make

regarding the adequacy of representation . . . is to determine that the putative . . . plaintiff has the

ability . . . to represent the claims of [the other shareholders] vigorously".  <u>Hassine v. Jeffes</u>, 846

F.2d 169, 179 (3d Cir. 1988) (citing <u>Gen. Tel. Co. of the Southwest Co. v. Falcon</u>, 457 U.S. 147,

157 n.13 (1982))[3]; <u>see also</u> <u>JPMorgan Chase</u>, 2008 WL 4298588, at *8.  A derivative plaintiff is

inadequate if his interests are "antagonistic to those of" other shareholders, with antagonism

---

[3] <u>Hassine</u> involved the Rule 23(a)(4) standard governing class action plaintiffs, but the Rule
23(a)(4) and Rule 23.1(a) standards are "analogous".  <u>JPMorgan Chase</u>, 2008 WL 4298588, at
*7; <u>see also</u> 7C Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and
Procedure § 1833, at 147 (2007).

turning on, among other things, "indications that the named plaintiff was not the driving force behind the litigation" and "plaintiff's unfamiliarity with the litigation". <u>Vanderbilt v. Geo-Energy Ltd.</u>, 725 F.2d 204, 207 (3d Cir. 1983) (quotation omitted).  Similarly, a derivative plaintiff must be willing "to protect the interests of the [other shareholders] against the possibly competing interests of the attorneys". <u>JPMorgan Chase</u>, 2008 WL 4298588, at *8 (quoting <u>Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.</u>, 222 F.3d 52, 61 (2d Cir. 2000)).

In <u>JPMorgan Chase</u>, for example, the court dismissed a derivative action on Rule 23.1 grounds where the "litigation ha[d] been controlled by counsel with absentee plaintiffs" and where the plaintiff did not show he would "fulfill his responsibilities to the shareholders and the corporation". <u>Id.</u>  The court noted that although the plaintiff, himself an attorney, "indicated familiarity with the nature of a derivative action, as well as knowledge of the factual basis for the instant action", he was an inadequate representative because, among other things, he "had generally not seen the orders issued in this case until the preparation for his deposition". <u>Id.</u> at *5-6.  In this case, as discussed below (<u>see</u> <u>infra</u> pp. 10-11), Mr. Kaufman has not seen (even in preparation for his deposition) any orders in the case, or read any of the documents that are at issue in the case, nor does he plan to do so going forward.  He also has not spoken to any other Qualcomm shareholder, and thus he has no sense for whether any such shareholder even supports this litigation. (Kaufman Tr. at 27:3-7 (Ex. 7).)

## I.   MR. HOCH HAS NOT AND WILL NOT PERFORM HIS RULE 23.1(a) DUTY.

The Court should dismiss, with prejudice, Mr. Hoch as plaintiff because he no longer wishes to occupy that role.  (<u>See</u> <u>supra</u> pp. 4-5.)  The Court also should dismiss Mr. Hoch with prejudice because, as shown below, the limited discovery Defendants have received

8

regarding his performance as plaintiff demonstrates that Mr. Hoch has provided only limited oversight of counsel.

According to Mr. Hoch himself, he had no written or oral communications with counsel in April, May or June 2011.  (See id. at 5.)  Yet, on May 16, 2011, counsel submitted an opposition to Defendants' motion to dismiss the initial complaint (D.I. 46), and on June 30, 2011, counsel filed a motion for partial summary judgment (which was withdrawn on July 7, 2011).  (D.I. 48-49, 52.)  It is surprising that these pleadings, and in particular a partially dispositive motion, would be filed without at least consulting Mr. Hoch.

Mr. Hoch also had no written or oral communications with counsel in November and December 2011, and January and February 2012, when Defendants sought to stay the proceedings during their approach to the IRS.  As Defendants explained to plaintiff's counsel, a stay of proceedings pending the IRS's consideration of the tax deductibility issue at the heart of the Complaint was in the best interests of the Company and its shareholders.  (See supra p. 5.)  That plaintiff's counsel did not even discuss this issue with Mr. Hoch is strong evidence that Mr. Hoch did not "protect the interests of the [other shareholders] against the possibly competing interests of the attorneys".  JPMorgan Chase, 2008 WL 4298588, at *8 (quotation omitted).

Finally, Mr. Hoch had no communications with plaintiff's counsel in April or May 2012.  Thus, he was apparently not consulted before counsel threatened Defendants with a motion for a preliminary injunction "preventing Qualcomm from entering into" the IRA and "request[ing] . . . an opportunity to present the facts", as viewed by plaintiff's counsel, "to the IRS".  (4/26/12 Letter at 1-2 (Ex. 10).)[4]  It is difficult to imagine that a diligent plaintiff

---

[4] Counsel did not move for an injunction after Defendants pointed out counsel's numerous factual errors and questioned whether such a motion would serve the best interests of Qualcomm's shareholders.  (4/27/12 Letter at 1-2 (Ex. 11).)

9

representing the interests of Qualcomm's shareholders would have authorized a motion seeking to prevent Qualcomm from obtaining a favorable tax interpretation from the IRS (and, even worse, a motion seeking to present counsel's argument against Qualcomm's tax position directly to the IRS).

       For all these reasons, Mr. Hoch is effectively an "absentee" plaintiff, JPMorgan Chase, 2008 WL 4298588, at *8, who cannot discharge his duty under Federal Rule 23.1(a).

## II.    MR. KAUFMAN WILL NOT PERFORM HIS RULE 23.1(a) DUTY.

       Substituting Mr. Kaufman for Mr. Hoch does not cure the Rule 23.1(a) deficiency, because Mr. Kaufman is similarly unable to fairly and adequately represent the interests of Qualcomm shareholders.

       First, both Mr. Kaufman and Mr. Levine, his investment adviser, have long-time personal ties to Mr. Bacine. The three men were fraternity brothers in college during the early 1960s and have remained in contact since then. (See supra p. 6.)

       Second, Mr. Kaufman is an entirely passive investor who does not read SEC filings or media and other stock-related reports. He relies entirely on Mr. Levine for his investment decisions, including with respect to Qualcomm, a stock Mr. Levine (or Mr. Kaufman's previous financial advisor) selected, not Mr. Kaufman. (Kaufman Tr. at 30:17-31:15 (Ex. 7).) Moreover, even after becoming a Qualcomm shareholder, Mr. Kaufman did not take any steps to learn about the Company or to read its public filings. Mr. Kaufman testified that he has never read any Qualcomm filings, including the Proxy Statement and other filings at issue in the case. (See supra p. 6.) Mr. Kaufman also testified that he did not have any concerns about the Proxy Statement or its Board processes, until Messrs. Levine and Bacine described this litigation to him in November 2012. (See id. at 6-7.) Based on this history alone, Mr. Kaufman -

10

- who owns less than one hundred-thousandth of one percent of the Company's outstanding shares -- is clearly not qualified to represent the interests of all other Qualcomm shareholders.

Third, Mr. Kaufman already has demonstrated undue reliance on counsel. In November 2012, Mr. Kaufman agreed to step in for Mr. Hoch as plaintiff, and on March 13, counsel represented it would seek to substitute him for Mr. Hoch. (See id. at 4, 7.) Yet Mr. Kaufman did not even receive the Complaint and the unredacted Amended Complaint until March 27, 2013 and April 2, 2013, respectively. (See id. at 7.) Mr. Kaufman's willingness to engage in litigation, sight unseen, hardly evokes confidence that he will exert meaningful oversight of his counsel (which again includes one of his former fraternity brothers). In addition, Mr. Kaufman's complete deference to Mr. Levine regarding his investments (see id. at 5-6) suggests he will be similarly passive with respect to his counsel in this lawsuit.

Fourth, Mr. Kaufman candidly admitted that he does not intend to oversee counsel in any meaningful way. Mr. Kaufman testified that his only plan to protect the interests of the other shareholders was by "bringing a lawsuit against the people who I feel have done something wrong" and by "[t]estifying to the best of my ability as to what I feel the problem was". (Kaufman Tr. at 50:6-23 (Ex. 7).) Notably, Mr. Kaufman feels no obligation to do anything further: "Q. Beyond testifying, do you feel that you have any other responsibilities as a derivative plaintiff? A. No." (Id. at 50:24-51:3.) Indeed, Mr. Kaufman "hope[s] not to have to" read any court filings because "[t]hey are long and difficult for a layperson to get through". (Id. at 51:4-8.) Mr. Kaufman still has not read the SEC filings at issue in the case, has not read the expert report submitted on plaintiff's behalf and will read deposition transcripts "[o]nly if counsel asks me to". (Id. at 65:10-66:11; see also id. at 33:25-34:24.) Mr. Kaufman clearly is

11

unwilling to "exert himself to become informed about" this litigation. JPMorgan Chase, 2008 WL 4298588, at *9.

Fifth, and not surprisingly considering the points above, Mr. Kaufman has only a cursory understanding (at best) of the allegations in the Amended Complaint and the status of the litigation itself. For example, he mistakenly believes that the Amended Complaint was filed only last month (Kaufman Tr. at 52:21-25 (Ex. 7)), and he has not read any of Defendants' arguments in opposition, let alone the supplemental authority recently submitted by Defendants (id. at 56:13-57:6; see also id. at 51:9-21). Nor has Mr. Kaufman reviewed the transcript of the oral argument before this Court; indeed, he was not even aware there was such an argument. (Id. at 56:24-57:6.) While no one expects a nonlawyer to be fluent in all the procedural and substantive issues in a case, Mr. Kaufman cannot possibly discharge his oversight duties without an understanding of why Defendants believe the litigation is unfounded and not in the best interests of his fellow shareholders. Among other things, that is the only way he can manage the competing interests of his lawyers and the Company's shareholders.

Mr. Kaufman also was unable to articulate the harm to Qualcomm that purportedly resulted from the allegations in the Amended Complaint. When pressed, Mr. Kaufman testified that Qualcomm was harmed because the directors received 100 million shares of stock as a result of the 2010 and 2011 shareholder votes. (Id. at 53:19-54:23.) That is simply not true, nor is it a theory pleaded anywhere in the Amended Complaint. As the Amended Complaint asserts, the 2010 and 2011 votes increased the total share reserve (by 78 million shares) available for grants to all participants in Qualcomm's long-term incentive -- that is, the increased share reserve was used as a means to compensate virtually all of Qualcomm's 40,000 employees. (Am. Compl. ¶¶ 29, 33, 43.) Mr. Kaufman also stated that "[t]here's a lot of

12

extra shares . . . that really should be brought back into the company", but when asked to explain whether "Qualcomm would have been better off had those shares not been issued", he responded "I really can't say". (Kaufman Tr. at 53:19-55:3 (Ex. 7).) Finally, Mr. Kaufman conceded that "the IRS has not said that the deductions cannot be taken" and was unable to explain how Qualcomm had been harmed from a tax perspective. (Id. at 55:13-56:9.)[5]

Again, if Mr. Kaufman cannot articulate how Qualcomm has been harmed, it is difficult to understand how he can properly manage a litigation seeking to cure that harm, particularly where there has been no demonstrable economic damage to the Company other than the litigation itself, which is costing Qualcomm hundreds of thousands of dollars in legal fees and resources. Cf. South v. Baker, 62 A.3d 1, 24-25 (Del. Ch. 2012) (where derivative plaintiff files claim prematurely, "[t]he natural and logical inference . . . is that the plaintiff is serving the interests of the law firm, rather than those of the corporation on whose behalf the plaintiff ostensibly seeks to litigate"; "A well-motivated derivative plaintiff, genuinely concerned about the corporation's best interests, will consider [the impact of suit on underlying litigation or government proceedings] and act carefully, not precipitously").

*     *     *     *

In summary, it is clear that Mr. Kaufman is unlikely to "protect the interests of the [other shareholders] against the possibly competing interests of the attorneys". JPMorgan Chase, 2008 WL 4298588, at *8 (quotation omitted). Similarly, the record establishes that

---

[5] Moreover, even if the process allegations had any merit -- and they do not -- Qualcomm still has not been harmed because the Board's subsequent ratification cured any process deficiencies. (See D.I. 128; D.I. 143.) Mr. Kaufman's desire to pursue the process claims under these circumstances further shows that he is not acting in the best interests of the Company's shareholders.

13

Mr. Kaufman is not the "driving force behind the litigation", nor does he intend to be.

Vanderbilt, 725 F.2d at 207 (quotation omitted).

## CONCLUSION

For each of the foregoing reasons, Defendants respectfully request that the Court

dismiss the Amended Complaint with prejudice against Mr. Hoch and not permit Mr. Kaufman

to be substituted as the plaintiff.


POTTER ANDERSON & CORROON LLP

OF COUNSEL:

Evan R. Chesler                                 By: /s/ Peter J. Walsh, Jr.
Rachel G. Skaistis                                  Richard L. Horwitz (#2246)
Leslie W. Regenbaum                                 Peter J. Walsh, Jr. (#2437)
CRAVATH, SWAINE & MOORE LLP                         Matthew D. Stachel (#5419)
Worldwide Plaza                                     Hercules Plaza, 6th Floor
825 Eighth Avenue                                   1313 N. Market Street
New York, New York 10019                            Wilmington, DE19801
Tel:  (212) 474-1000                                Tel:  (302) 984-6000
EChesler@cravath.com                                rhorwitz@potteranderson.com
RSkaistis@cravath.com                               pwalsh@potteranderson.com
LRegenbaum@cravath.com                              mstachel@potteranderson.com

Dated:   April 23, 2013                         *Attorneys for Defendants*
Public Version Dated: April 30, 2013
1104286 / 36664

14

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

## CERTIFICATE OF SERVICE

I, Peter J. Walsh, Jr., hereby certify that on April 30, 2013, the attached document was electronically filed with the Clerk of the Court using CM/ECF which will send notification to the registered attorney(s) of record that the document has been filed and is available for viewing and downloading.

I further certify that on April 30, 2013, the attached document was Electronically Mailed to the following person(s):

Joseph J. Farnan, Jr.
Joseph J. Farnan, III
Brian E. Farnan
Farnan LLP
919 N. Market Street
12th Floor
Wilmington, DE 19801
farnan@farnanlaw.com
jjfarnan@farnanlaw.com
bfarnan@farnanlaw.com

Alexander Arnold Gershon
William J. Ban
Michael A. Toomey
Barrack Rodos & Bacine
425 Park Avenue, Suite 3100
New York, NY 10022
agershon@barrack.com
wban@barrack.com
mtoomey@barrack.com

Daniel E. Bacine
Barrack, Rodos & Bacine
Two Commerce Square
2001 Market Street, Suite 3300
Philadelphia, PA 19103
dbacine@barrack.com
mailto:jpalley@barrack.com

Samuel M . Ward
Barrack, Rodos & Bacinie
One America Plaza
600 West Broadway, Suite 9 00
San Diego, CA 92101
sward@barrack.com

By:    /s/ Peter J. Walsh, Jr.
       Richard L. Horwitz
       Peter J. Walsh, Jr.
       Matthew D. Stachel
       POTTER ANDERSON & CORROON LLP
       Tel: (302) 984-6000
       rhorwitz@potteranderson.com
       pwalsh@potteranderson.com
       mstachel@potteranderson.com

1009647 / 36664