IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

**JEFFREY KAUFMAN,**

Plaintiff;

v.

**BARBARA T. ALEXANDER, et al.,**

Defendants,

v.

**QUALCOMM INCORPORATED**

Nominal Defendant.

Civil Action No. 11-00217-RGA

AMENDED MEMORANDUM OPINION

Brian E. Farnan, Esq., Farnan LLP, Wilmington, DE; Alexander Arnold Gershon, Esq. (argued), Barrack, Rodos & Bacine, New York, NY; Michael A. Toomey, Esq., Barrack, Rodos & Bacine, New York, NY; Jeffrey A. Barrack, Esq., Barrack, Rodos & Bacine, Philadelphia, PA, attorneys for the Plaintiff.


Richard L. Horwitz, Esq., Potter Anderson & Corroon LLP, Wilmington, DE; Rachel G. Skaistis, Esq. (argued), Cravath, Swaine & Moore LLP, New York, NY; Leslie W. Regenbaum, Esq., Cravath, Swaine & Moore LLP, New York, NY, attorneys for the Individual Defendants.

Collins J. Seitz, Jr., Esq., Seitz Ross Aronstam & Moritz LLP, Wilmington, DE; William B. Sailer, Esq., Qualcomm, San Diego, CA, attorneys for Defendant Qualcomm.


April 23 , 2014

ANDREWS, UNITED STATES DISTRICT JUDGE:

Presently before the Court for disposition are Defendants Barbara T. Alexander, Stephen

M. Bennett, Donald G. Cruickshank, Raymond V. Dittamore, Thomas W. Horton, Irwin M.

Jacobs, Robert E. Kahn, Sherry Lansing, Duane Nelles, Francisco Ros, Brent Scowcroft, Marc I.

Stern, William E. Keitel, Steven R. Altman, Steven M. Mollenkopf, and Donald J. Rosenberg's

("Individual Defendants") Motion for Summary Judgment and Jeffrey Kaufman's ("Plaintiff")

Motion for Partial Summary Judgment.   (D.I. 230, 236).   These matters have been fully briefed.

(D.I. 231, 255, 264, 306, 237, 252, 266).   The Court heard Oral Argument on the motions on

October 8, 2013.   For the reasons set forth herein, the Individual Defendants' Motion for

Summary Judgment is **GRANTED** and the Plaintiff's Motion for Summary Judgment is

**DENIED.**

## PROCEDURAL BACKGROUND

The original complaint in this case was filed on March 11, 2011 and included three

claims.   (D.I. 1).   The complaint included one direct claim and two derivative claims, all arising

out of a 2011 proxy statement produced by QualComm Incorporated.   The direct claim sought

relief pursuant to § 14 (a) of the Exchange Act and SEC Rules 14a-4 and 14a-9 "for making

materially false and misleading statements to the stockholders in the 2011 proxy Statement." *Id.*

at ¶ 41.   The two derivative actions were Delaware state law claims for breach for fiduciary duty

and corporate waste. *Id.* at ¶¶ 47-55.   Upon a Motion to Dismiss filed by the Individual

Defendants, the Court granted partial relief, dismissing the direct claim.   (D.I. 50).

1

The Plaintiff then filed a first amended complaint on August 13, 2012, which included ten new claims, four direct and six derivative.[1] (D.I. 122). The Defendants moved to dismiss the amended complaint, which was granted in part. (D.I. 205). The only remaining claims were then Claims II, III, VIII, IX, X, XI, XII, and XIII. The second amended verified complaint was filed on July 12, 2013.[2] (D.I. 213).

## LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED.R.CIV.P. 56(a). The moving party has the initial burden of proving the absence of a genuinely disputed material fact relative to the claims in question. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). Material facts are those "that could affect the outcome" of the proceeding, and "a dispute about a material fact is 'genuine' if the evidence is sufficient to permit a reasonable jury to return a verdict for the nonmoving party." *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The burden on the moving party may be discharged by demonstrating that there is an absence of evidence supporting the non-moving party's case. *Celotex*, 477 U.S. at 325.

The burden then shifts to the non-movant to demonstrate the existence of a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986); *Williams v. Borough of West Chester, Pa.*, 891 F.2d 458, 460–61 (3d Cir. 1989). A non-moving party asserting that a fact is genuinely disputed must support such an assertion by: "(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored

---

[1] The amended complaint also included the dismissed claim from the original complaint; however, it was included with the stipulation that its presence served only to preserve the Plaintiff's right to appeal. (D.I. 160 at 31).
[2] The second amended verified complaint recognized the Court's order allowing for the substitution of the Plaintiff.

information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or

other materials; or (B) showing that the materials cited [by the opposing party] do not establish

the absence . . . of a genuine dispute . . . ." FED.R.CIV.P. 56(c)(1).

When determining whether a genuine issue of material fact exists, the court must view

the evidence in the light most favorable to the non-moving party and draw all reasonable

inferences in that party's favor. *Scott v. Harris*, 550 U.S. 372, 380 (2007); *Wishkin v. Potter*,

476 F.3d 180, 184 (3d Cir. 2007). A dispute is "genuine" only if the evidence is such that a

reasonable jury could return a verdict for the non-moving party. *Anderson*, 477 U.S. at 247–49.

If the non-moving party fails to make a sufficient showing on an essential element of its case

with respect to which it has the burden of proof, the moving party is entitled to judgment as a

matter of law. *See Celotex Corp.*, 477 U.S. at 322.

## ANALYSIS

### Claims II and III

Claims II and III are derivative claims against the directors for distributing false and

misleading information in the proxy statement and breaching their fiduciary duties. (D.I. 213 at

32-34). The claims are premised on the theory that the statements made by the directors in the

2011 proxy statement, regarding the long-term incentive plan ("LTIP"), would prevent

Qualcomm from receiving tax deductions under Treasury Regulation § 1.162-27(e)(4)(i) and §

162(m). *Id.*

### Legal Standard

"The Internal Revenue Code (IRC) generally disallows deductions for employee

remuneration in a publicly held corporation in excess of $1 million." *Shaev v. Saper*, 320 F.3d

373, 379 (3d Cir. 2003). However, the IRC allows for corporations to deduct wages in excess of

one million dollars when the compensation is based upon an incentive plan that meets a "narrow

set" of requirements.   *Id.*   The incentive plan is only deductible if:

> (i)     the performance goals are determined by a compensation committee of the
>         board of directors of the taxpayer which is comprised solely of 2 or more
>         outside directors,
>
> (ii)    the material terms under which the remuneration is to be paid, including
>         the performance goals, are disclosed to shareholders and approved by a
>         majority of the vote in a separate shareholder vote before the payment of
>         such remuneration, and
>
> (iii)   before any payment of such remuneration, the compensation committee
>         referred to in clause (i) certifies that the performance goals and any other
>         material terms were in fact satisfied.

26 U.S.C. § 162(m)(4)(c).   The regulations additionally require that:

> The requirements . . . are not satisfied if the compensation would be paid regardless
> of whether the material terms are approved by shareholders.   The material terms
> include the employees eligible to receive compensation; a description of the
> business criteria on which the performance goal is based; and either the maximum
> amount of compensation that could be paid to any employee or the formula used to
> calculate the amount of compensation to be paid to the employee if the performance
> goal is attained (except that, in the case of a formula based, in whole or in part, on
> a percentage of salary or base pay, the maximum dollar amount of compensation
> that could be paid to the employee must be disclosed).

26 C.F.R. § 1.162–27(e)(4)(i).

The aforementioned regulations are violated where shareholders are not provided a real

choice as to whether to accept the LTIP.   For example, the Court in *Shaev* found that a proxy

statement was coercive when the shareholders were informed that regardless of their vote the

LTIP would be enacted.   *Shaev*, 320 F.3d at 381.   Conversely, in *Seinfeld v. O'Connor*, the

Court found that when a proxy statement reserves the right to maintain bonus payments, but does

not state that bonus payments will continue to be made, the proxy statement is not coercive.   774

F. Supp. 2d 660, 669 (D. Del. 2011).   This interpretation is supported by a private letter ruling

by the IRS.[3]   I.R.S. P.L.R. 200617018, 2006 WL 1126274 (Apr. 28, 2006).

**Discussion**

The Defendants argue that as a matter of law and fact "Qualcomm's shareholders were

not coerced into approving the 2011 amended LTIP and that, absent coercion, the relevant

Treasury regulation was not violated."   (D.I. 264 at 9).   Conversely, the Plaintiff argues that the

2011 proxy Statement was coercive.   (D.I. 255 at 33).

> The relevant portion of the Proxy Statement states:
>
> Should stockholder approval not be obtained, then the proposed amendments will not be implemented, and the 2006 LTIP will continue in effect pursuant to its current terms. However, the shares reserved for issuance will be depleted, and the 2006 LTIP will not achieve its intended objectives of helping to attract and retain employees.

(D.I. 234-1 at 52).

It is clear from the language of the 2011 Proxy Statement that this case is unlike *Shaev*.

There the proxy statement informed the shareholders that a specific bonus payment would be

made independent of their vote, and that they were only determining if the bonus would be tax

deductible.   Here the shareholders were choosing between a new and the old LTIP.   The Proxy

Statement simply informed the shareholders that a "no" vote would result in the 2006 LTIP

remaining the governing document for the company.   Furthermore, the statement communicated

the factual situation that, without the issuance of additional shares, the company could not

achieve the goal of the 2006 LTIP.   This is much like in *Seinfeld* where the proxy statement

reserved the right to make specific payments but did not require them to be made, thereby

communicating to the shareholders that a "no" vote would maintain the status quo.   Thus, the

---

[3] The Court is mindful that a private letter ruling is not binding on the Court; however, the Court does find the letter to be informative.

challenged language was not coercive.  (*See* D.I. 160 at 52 ("If you don't vote for this, then the thing is in effect, it's status quo, that's not coercion.   And the kinds of things that were cited by the plaintiff, which involved essentially making threats[,] is a much different kind of thing.")). The Court concludes that no reasonable jury could find for the Plaintiff on Claims II and III. The Individual Defendants' motion for summary judgment as it pertains to these claims is therefore granted.[4]

## Claim X

Claim X is a derivative claim that alleges that the Defendants "provided misleading information to the I.R.S. in pursuit of an I.R.A." and therefore "violated federal law and subjected Qualcomm to a potential $500,000 fine," thus causing the Company to be harmed. (D.I. 213 at 39).

**Legal Standard**

Claim X seeks injunctive relief to prevent Defendants from pursuing a "closing agreement" based on the IRA that Defendants received from the IRS.   The Internal Revenue Code allows the Secretary "to enter into an agreement in writing with any person relating to the liability of such person (or of the person or estate for whom he acts) in respect of any internal revenue tax for any taxable period."   I.R.C. § 7121(a).   Furthermore, "If such agreement is approved by the Secretary . . . such agreement shall be final and conclusive, . . . except upon a showing of fraud or malfeasance, or misrepresentation of a material fact . . . ."   *Id.* at (b).   If Qualcomm were found to have proceeded with a closing agreement and were found to have

---

[4] Because Counts II and III are premised on Plaintiff's theory that statements made in the 2011 Proxy Statement would prevent Qualcomm from taking tax deductions under the ESPP, and the Court finds that this theory is erroneous, the Court need not dive into the Plaintiff's remaining arguments as they concern Counts II and III.

proceeded based on misrepresentations of material fact, Qualcomm could be fined not more than $500,000.   IRC § 7206.

**Discussion**

The Plaintiff makes three overarching arguments, "[(1)] Defendants have provided false information to the IRS, [(2)] have withheld information that would call the IRA into question, and [(3)] have not confirmed that they will not pursue a closing agreement."   (D.I. 255 at 20). The Plaintiff contends that the "Defendants have misled the IRS by stating that 'shareholders approved the material terms of the performance goals in a separate majority vote at Taxpayer's annual stockholder meeting on March 8, 2011' in the draft IRA that Defendants' counsel drafted for the IRS."   *Id.* at 36.   Furthermore, the Plaintiff argues that "Defendants[] concede that they have not informed the IRS of any of Plaintiff's process-based claims, presumably meaning they have not shared this Court's July 2, 2013 opinion with the IRS."   *Id.*

The Individual Defendants argue that the "the record is devoid of any evidence that the IRS was misled" and the Plaintiff fails to "cite to anything beyond his own speculation."   (D.I. 264 at 15).   Specifically, the Individual Defendants raise four main arguments.   First, that the two internal IRS emails had no impact on the IRS final conclusion as reflected in the IRA.   (D.I. 231 at 32).   Second, that "there is no evidence that Qualcomm employees had anything to do with the IRS's consideration of the 2010 shareholder vote."   *Id.*   The Individual Defendants cite as evidence for this the deposition of Mr. Schneck, Qualcomm's Director of Tax, who testified that he had no conversations with the IRS regarding the 2010 shareholder vote.   (D.I. 235-7 at 94).   Third, that the Individual Defendants did not play any role in reviewing the internal IRS communications regarding the 2010 vote.   (D.I. 231 at 33).   Fourth, and finally, the Individual Defendants argue that the Board process claims were not provided to the IRS until after the IRA

7

was completed because the Plaintiff had not yet alleged those claims. *Id.* The Court agrees with each of the aforementioned arguments of the Individual Defendants.

The Court finds that there is no genuine dispute as to any material fact. Here, the Individual Defendants adequately demonstrated that there is both an absence of evidence supporting the Plaintiff's case and direct evidence supporting the Individual Defendants case. The Plaintiff has failed to demonstrate any material fact that is genuinely disputed and supported by evidence. Therefore, the Individual Defendants motion for summary judgment as to Claim X is granted as no reasonable juror could find for the Plaintiff regarding this Claim.

### Claims IX, XII, XIII

Claims IX, XII, XIII are all derivative claims and therefore require that the Plaintiff make a presuit demand on the Board unless demand is excused.[5]

**Legal Standard**

Pursuant to FED.R.CIV.P. 23.1(b)(3), a shareholder bringing a derivative action must file a verified complaint that states with particularity: "(A) any effort by the plaintiff to obtain the desired action from the directors or comparable authority and, if necessary, from the shareholders or members; and (B) the reasons for not obtaining the action or not making the effort." FED.R.CIV.P. 23.1(b)(3) "The purpose of the demand requirement is to afford the directors an opportunity to exercise their reasonable business judgment and waive a legal right vested in the corporation in the belief that its best interests will be promoted by not insisting on such right." *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 96 (1991) (internal quotation marks omitted). "Although Rule 23.1 provides the pleading standard for derivative actions in

---

[5] Lack of presuit demand is raised in regard to the other derivative claims, but it is not necessary to resolve the issue in regard to these claims.

federal court, the substantive rules for determining whether a plaintiff has satisfied that standard are a matter of state law." *King v. Baldino*, 409 F. App'x 535, 537 (3d Cir. 2010) (internal quotation marks omitted). "Thus, federal courts hearing shareholders' derivative actions involving state law claims apply the federal procedural requirement of particularized pleading, but apply state substantive law to determine whether the facts demonstrate demand would have been futile and can be excused." *Kanter v. Barella*, 489 F.3d 170, 176 (3d Cir. 2007). The Delaware Supreme Court has characterized the exercise of determining demand futility as deciding "whether, under the particularized facts alleged, a reasonable doubt is created that: (1) the directors are disinterested and independent and (2) the challenged transaction was otherwise the product of a valid exercise of business judgment." *Aronson v. Lewis*, 473 A.2d 805, 814 (Del. 1984), *overruled on other grounds by Brehm v. Eisner*, 746 A.2d 244 (Del. 2000).

**Discussion**

The Plaintiff contends that he is excused from making a demand on the board. The Plaintiff's argument primarily revolves around the fact that directors "are eligible to participate in 2006 LTIP. . . ." (D.I. 255 at 37). In other words, the Plaintiff questions whether the directors were disinterested and independent. The Plaintiff directs the Court's attention to the 2011 proxy statements which indicate that, "All full-time employees are eligible to receive equity awards. At present, approximately 16,000 employees and 12 non-employee directors are eligible to receive awards under the 2006 LTIP." (D.I. 234-1 at 42). Similar language exists in the 2010 proxy statement, which states, "The Company's policy is that all full-time employees are eligible to receive stock options. At present, approximately 15,000 employees and 11 non-employee directors are eligible to receive awards under the 2006 LTIP." (D.I. 235-2 at 127). The Plaintiff contends that because "the complaint challenges the compensation plan that the

outside directors established and under which they pay themselves, demand is excused." (D.I. 255 at 39). The Plaintiff additionally argues that the directors had a material interest in the 2010 and 2011 proxy statements because the proxy statements increased the number of shares that were available to compensate the directors. (D.I. 255 at 39; D.I. 235-2 at 126). In other words, the Plaintiff contends that because the directors could not be paid if the proposal was not passed, they had a material interest in the proposal.

The Individual Defendants make five main arguments. First, the Individual Defendants contend that "the 2011 Amended LTIP did not establish the Directors' right to compensation, nor the amount of their compensation; it only provided a mechanism for them to be compensated in the form of Director Stock Units ("DSUs"). This means that the 2011 Amended LTIP conferred no new benefit on the Directors that they did not already enjoy." (D.I. 231 at 44). Second, the Individual Defendants argue that there is no evidence that if there were insufficient DSUs available that the Directors would not be paid using alternative compensation forms, such as cash. *Id.* at 45. Third, the change to the date in which the DSUs vest after retirement is not relevant as no evidence is proffered by the Plaintiff that any board member would benefit from this change. *Id.* Fourth, the Individual Defendants argue that because only three of the eight directors served on the Compensation Committee, their presence could not excuse demand. *Id.* at 45, 46. Fifth, the record is devoid of any evidence that the Directors played any role with respect to the IRS. *Id.*

The Court finds that demand was not excused. First, it is evident that the amended LTIP conferred no new benefit on the Directors. The 2006 LTIP had already awarded directors with DSUs, and the Director's award of $200,000 per year had been enacted in 2010. Therefore the 2011 amendments, while increasing the number of shares available to be utilized by the 2006

10

LTIP plan, simply maintained the status quo. (D.I. 234-1 at 99, 231). Second, the Court agrees

with the Individual Defendants regarding the directors' interests in the DSUs. The Individual

Defendants successfully pointed to an absence of evidence proffered by the Plaintiff that either

the DSUs are more advantageous to Directors or that the Directors would not otherwise be

compensated in the event that the 2011 Amended LTIP was rejected by shareholders. The

Plaintiff fails to bring forth any relevant evidence on the aforementioned issues. Furthermore,

the Plaintiff was required not only to show that the DSUs would be advantageous, but that this

advantage was material to a majority of the directors. Plaintiff has not identified any evidence

that would do so. *Robotti & Co., LLC v. Liddell*, 2010 WL 157474, \*12 (Del. Ch. Jan. 14,

2010). Finally, the Court agrees with the Individual Defendants that the presence of three of the

eight board members on the compensation committee cannot excuse demand and that the

Plaintiff provided no evidence that the board members were in communication with the IRS

regarding the IRA. Therefore, the Plaintiff has failed to meet its burden of providing evidence

of a genuine dispute of material fact. No reasonable fact finder would find that demand was

excused.[6] Thus, the Court finds that demand was not excused and grants the Individual

Defendants' motion for summary judgment as to the derivative claims.[7]

## Claim VIII

Claim VIII is a direct claim based upon the Plaintiff's theory that the "Defendants failed

to properly approve the 2006 LTIP, as amended in 2011, for a shareholder vote at the meeting

---

[6] The parties agreed that if there were a disputed material fact regarding presuit demand, it would be for the Court and not the jury to resolve. (D.I. 298 at 7, 8).

[7] The Individual Defendants moved in part to dismiss the Original Complaint for failure to make a presuit demand. (D.I. 43). The Court rejected this argument as "it [was] a close question as to whether [the Plaintiff] has properly interpreted the proxy statement," and thus, "this court cannot conclude at this stage of the proceedings that his Complaint fails to state a claim." (D.I. 50 at 9). We are now at a stage in the litigation that the Court has an adequate evidentiary record to readdress this issue.

despite the fact that this was required by Qualcomm's bylaws.   Instead, Director Defendants

improperly abdicated these duties." (D.I. 213 at ¶ 107).

**Legal Standard**

The fundamental purpose of a Delaware corporation's bylaws "is not to mandate how the

board should decide specific substantive business decisions, but rather, to define the process and

procedures by which those decisions are made." *CA, Inc. v. AFSCME Employees Pension Plan,*

953 A.2d 227, 234-35 (Del. 2008).

> [U]nless otherwise provided by the certificate of corporation and subject to the
> limitations set forth in 8 Del. Code Ann. § 141(c), the board may freely delegate
> the authority to manage the business and affairs of the corporation. . . . Indeed, the
> ability to delegate is the essence of corporate management, as the law does not
> expect the board to fully immerse itself in the daily complexities of corporate
> operation.

*Schoonejongen v. Curtiss-Wright Corp.,* 143 F.3d 120, 127 (3d Cir. 1998) (internal citations

omitted).

A corporation may also act through its directors and officers through either direct or

implied authority.  *Id.*

> Express authority to act on behalf of the corporation is usually manifested through
> a statute, the certificate of corporation, the by-laws, or a board or shareholder
> action.   Implied actual authority . . . may be found through evidence as to the
> manner in which the business has operated in the past, the facts attending the
> transaction in question, circumstantial evidence of board declarations surrounding
> the given transaction, or the habitual usage or course of dealing common to the
> company.   Similarly, authority will be implied when it is reasonably necessary and
> proper to effectuate the purpose of the office or the main authority conferred.

*Id.* at 127-128.

**Discussion**

The Plaintiff argues that "because the board did not slate the 2010 and 2011 shareholder

votes, as required by Qualcomm's Bylaws, the Certificate of Incorporation, and Delaware law,

12

these votes were not properly before shareholders." (D.I. 237 at 19).   The Plaintiff contends

that the amendments were not properly in front of the shareholders both because the bylaws

required that the directors, not the compensation committee, slate the LTIP for a vote and

because the 2011 proxy states that the 2011 amendments were unanimously recommended by the

Board of Directors. *Id.* at 12.   The Individual Defendants argue that "the undisputed factual

record shows that the 2010 and 2011 Amended LTIPs were presented to shareholders by the

Board, through its express designee the Compensation Committee, in full compliance with

Qualcomm's by-laws." (D.I. 231 at 34).

The pertinent section of Qualcomm's bylaws states:

> (b) At an annual meeting of the stockholders, *only such business shall be conducted as shall have been properly brought before the meeting.*   To be properly brought before an annual meeting, business must be: (A) specified in the notice of meeting (or any supplement thereto*) given by or at the direction of the Board of Directors*, (B) otherwise *properly brought before the meeting by or at the direction of the Board of Directors*, or (C) otherwise properly brought before the meeting by a stockholder.
>
> No business shall be conducted at any annual meeting except in accordance with the procedures set forth in this paragraph (b).   The chairman of the annual meeting shall, if the facts warrant, determine and declare at the meeting that business was not properly brought before the meeting and in accordance with the provisions of this paragraph (b), and, if he should so determine, he shall so declare at the meeting that any such business not properly brought before the meeting shall not be transacted.

(D.I. 235-2 at 94-96 (emphasis added)).

The pertinent sections of the Compensation Committee Charter state the Compensation

Committee will:

> 1.      Be responsible for the design, implementation and administration of all Company-wide benefit plans, including equity-based compensation programs. This authority shall include, but not be limited to, administration of the Company's long-term incentive compensation plans and grants made thereunder.   The

Committee may delegate such responsibility and authority as it sees fit, as permitted by the terms of such benefit plans and applicable law, subject to any policies or other limitations established from time to time by the Board.

2.      Make an annual recommendation to the independent members of the Board regarding the amount of annual bonus and stock compensation pools.

. . .

4.      Review provisions of all compensation and benefit plans requiring approval by Company stockholders, including new plans and amendments to continuing plans, and make appropriate recommendations to the Board regarding such approval.

(D.I. 238-4 at 4, 5).

The pertinent sections of the 2006 Proxy Statement, which, when passed, approved the

LTIP, state:

"Board" means the Board of Directors of the Company.

"Committee" means the Compensation Committee or other committee of the Board duly appointed to administer the Plan and *having such powers as shall be specified by the Board.* If no committee of the Board has been appointed to administer the Plan, the Board shall exercise all of the powers of the Committee granted herein, and, in any event, the Board may in its discretion exercise any or all of such powers. *The Committee shall have the exclusive authority to administer the Plan and shall have all of the powers granted herein, including, without limitation, the power to amend or terminate the Plan at any time, subject to the terms of the Plan and any applicable limitations imposed by law.*

(D.I. 234-1 at 214, 215 (original emphasis omitted, emphasis present added)).

The Compensation Committee minutes for the 2011 shareholder meeting indicate that

three amendments to the LTIP were approved.   (D.I. 238-8 at 2-4).   Present at the meeting were

three members of the board, Mr. Steve Bennett (Chairman), Mr. Brent Scowcroft, and Mr. Marc

Stern.  *Id.* at 2.   The minutes state,

[T]hat the Committee approves and will recommend in the proxy statement for the 2011 annual meeting that stockholders approve, an increase in the 2006 LTIP share reserve of 65 million shares, a change in the share reserve counting ratio for shares

14

other than stock options and SARS granted without dividend equivalents from 3:1 to 2:1 [REDACTED]. . . .

*Id.* at 3 (emphasis omitted; redaction in original).   No evidence has been submitted to the Court by either party that the aforementioned three amendments to the LTIP were then submitted and approved by the Board of Directors to be submitted to the shareholders.   In fact, the text of the aforementioned minutes indicates that the Compensation Committee understood that it was within their power to incorporate statements regarding compensation directly into the proxy statement.

The Court finds that there is no genuine issue of fact as to whether the Compensation Committee had been expressly provided authority to effectuate amendments to the LTIP and thus had implied authority to submit these amendments for a shareholder vote.   Here the Bylaws, Compensation Committee Charter, and the 2006 Proxy statement all make clear that the Compensation Committee was provided the requisite authority to amend the LTIP and that this authority was appropriate under the bylaws of the Corporation.   Therefore, no reasonable jury would find that the Defendants failed to properly approve the 2006 LTIP, as amended in 2011, for a shareholder vote.   Thus, the Individual Defendants' Motion for Summary Judgment as to Claim VIII is granted.[8]

The Plaintiff's argument that there had been changes to the wording of the LTIP amendments that had not been approved by either the Compensation Committee or the Board of Directors, and thus were improperly before the shareholders, is unpersuasive.   For example, the

---

[8] The Plaintiff also argues that it is evident that the Defendants utilized the wrong method in approving the Amendments to the LTIP because the Defendants had utilized an alternate method in 2006 and 2008; however, this argument is unpersuasive.   As the Court finds that the bylaws provide the Committee with the proper authority to submit the amendments to the shareholders for a vote, it is not relevant whether the same method was used in 2006 and 2008.   Furthermore, whatever method was used in 2006 and 2008 surely did not serve to amend the bylaws and thus did not impact the authority granted to the Committee.

phrase "to approve amendments to the 2006 Long-Term Incentive Plan" was changed to, "to approve the 2006 Long-Term incentive Plan. . . ." (D.I. 237 at 12). Ms. Burns, the Director of Stock Administration who approved the wording changes, testified that while she could not remember the reason for these specific changes, the reason that changes are made by outside counsel, as was the situation here, is to clarify the language, not to amend its substantive meaning. (D.I. 235-7 at 35, 37, 40). Furthermore, the Plaintiff has not directed the Court's attention to any testimony that would indicate that the changes were made for any other reason, nor any testimony that they were objected to by any director or Committee member. While the Plaintiff argues the changes were substantive because it would bring the proposals in line with § 162(m), the Individual Defendants provides unrebutted testimony that this was in fact the intent of the Committee. (D.I. 237 at 14; D.I. 252 at 27; 235-7 at 47, 48). Thus the Court finds that the plaintiff has not met its burden to put forth evidence to show a genuine dispute of material fact that the wording changes were either material or substantive in nature.

## Claim XI

Claim XI is a breach of contract direct claim against all Defendants based on the § 16 of the 2006 LTIP.[9] (D.I. 213 at 40).

### Legal Standard

Under Delaware corporate law, "charters and bylaws are contracts among a corporation's shareholders. . . ." *Airgas, Inc. v. Air Products & Chemicals, Inc.*, 8 A.3d 1182, 1188 (Del. 2010). However, "Delaware law clearly holds that officers of a corporation are not liable on

---

[9] The Court directed the parties to file letters with the Court addressing the circumstances that would lead to the conclusion that a board of directors and these shareholders entered into a contract with each other, and how this would impact Claim XI. (D.I. 307, 308).

corporate contracts as long as they do not purport to bind themselves individually." *Wallace ex rel. Cencom Cable Income Partners II, Inc., L.P. v. Wood*, 752 A.2d 1175, 1180 (Del. Ch. 1999).

**Discussion**

The Plaintiff has not pled, (D.I. 213 at 38, 39), and I find no evidence in the LTIP, (D.I. 235-1 at 6-38), that the Directors purported to bind themselves individually to the LTIP. Therefore the Court grants the Individual Defendants' Motion for Summary Judgment concerning this claim.

## Conclusion

For the reasons above, the Court will **GRANT** the Individual Defendants' Motion for Summary Judgment (D.I. 230) and **DENY** the Plaintiff's Motion for Summary Judgment (D.I. 236). Other pending motions are moot, and will therefore be dismissed. An appropriate order has been entered.